**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| Keith R. Crumley, by Next Friend Shirley CRUMLEY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:19-cv-4110 |
| | ) ) | |
| Kerry J. FORESTALL, in his official capacity as the Sheriff of Marion County; MARION COUNTY SHERIFF'S OFFICE; Bryan K. ROACH, in his official capacity as Chief of Police of the IMPD; INDIANAPOLIS METROPOLITAN POLICE DEPARTMENT; Officer Khyree JONES, in his individual capacity; Teresa PIERCE, in her individual capacity; CORRECT CARE SOLUTIONS (aka Wellpath LLC); Tyler BOUMA, in his individual capacity; JoAnna SAHM, in her individual capacity; Robert D. FREDERICK, in his individual capacity; Diedra D. BAKER, in her individual capacity; Tanesha S. CREAR, in her individual capacity; William WEAVER, in his individual capacity; Officer Foxworthy (ID 41380), in his individual Capacity. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Request for jury trial. |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Keith Crumley, through his next friend and guardian Shirley Crumley, by counsel, alleges as follows against Defendants:

### I.   INTRODUCTION

1.   In October 2017, Mr. Crumley, an individual with a significant intellectual disability and mental health diagnoses, was detained against the medical advice and recommendation of Eskenazi Health. While Mr. Crumley was in custody, Defendants failed to

provide necessary medications or basic medical care, failed to provide proper supervision and support in order to protect him from harm and injury, and failed to provide reasonable accommodations for his disability or protect him from discrimination.

2.     Mr. Crumley, by counsel and through his next friend and guardian, brings this action pursuant to 42 U.S.C. Section 1983 for damages against Defendants for their unconstitutional denial of protection, deliberate indifference for his medical needs in violation of the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the laws and public policies of the State of Indiana.

## II.    JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343.

4.     Defendants are located within this District, and the events giving rise to the claims identified within this Complaint substantially occurred in this District. Pursuant to 28 U.S.C. § 1391(b), this Court is the proper venue.

## III.   PARTIES

5.     Plaintiff, Keith Crumley, a resident of Marion County, brings this action through his next friend and legal guardian, Shirley Crumley.

6.     Mr. Crumley is diagnosed with schizoaffective disorder, intermittent explosive disorder, and an intellectual disability. Mr. Crumley is a qualified individual with a disability within the meaning of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 ("ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794a ("Section 504").

2

7.      Defendant Marion County Sheriff's Office ("MCSO") is named with respect to Mr. Crumley's claims under the ADA, Section 504, and claims for injunctive relief.

8.      Defendant MCSO operates the Marion County Jail and is a public entity within the meaning of the ADA, 42 U.S.C. § 12131(1), 28 C.F.R. § 35.104, and is subject to Title II of the ADA and its implementing regulations. Defendant MCSO is a recipient of federal funding within the meaning of Section 504, 29 U.S.C. § 794; 28 C.F.R. 42.540(e)-(f), and operates services, programs, or activities within the meaning of Title II and Section 504.

9.      Defendant Kerry J. Forestall, is named in his official capacity as the Sheriff of Marion County, and is responsible for leading the Marion County Sheriff's Office and each of its employees. In this role Forestall is able to create and amend policies and is responsible for ensuring that the Marion County Sherriff's Office complies with all federal and state laws and regulations. Sheriff Forestall is named with respect to Mr. Crumley's claims under the ADA, Section 504, and claims for injunctive relief.

10.      Defendant Correct Care Solutions aka Wellpath LLC[1], a private entity responsible for providing medical care to individuals incarcerated within the Marion County Jail, is subject to Title III of the ADA, 42 U.S.C. § 12181 et seq., 28 C.F.R. 36.01 et seq. Correct Care Solutions is named with respect to Mr. Crumley's claims under the ADA, Section 504, and claims for injunctive relief.

11.      Defendant Indianapolis Metropolitan Police Department ("IMPD") was at all relevant times the responding law enforcement entity at issue. IMPD is a public entity within the meaning of the ADA, 42 U.S.C. § 12131(1), 28 C.F.R. § 35.104, and is subject to Title II of the

---

[1] At the time at issue, Correct Care Solutions was entity responsible for providing medical services within the Marion County Jail. Upon information and belief, Correct Care Solutions has since merged with and may now be operating as Wellpath LLC.

ADA and its implementing regulations. Defendant IMPD is a recipient of federal funding within the meaning of Section 504, 29 U.S.C. § 794; 28 C.F.R. 42.540(e)-(f), and operates services, programs, or activities within the meaning of Title II of the ADA and Section 504.

12.    Defendant Bryan K. Roach, is named in his official capacity as Chief of Police of the IMPD. Roach is able to create and amend policies and is responsible for ensuring that the IMPD complies with all federal and state laws and regulations. Chief Roach is named with respect to Mr. Crumley's claims under the ADA, Section 504, and claims for injunctive relief.

13.    Defendant Officer Khyree Jones (41350), at all relevant times, was employed as a police officer with the IMPD, is named in his individual capacity for the purposes of Mr. Crumley's federal constitutional claims through 42 U.S.C. § 1983.

14.    Defendant Teresa Pierce, upon information and belief, is a nurse employed by Correct Care Solutions is named in her individual capacity, for the purposes of Mr. Crumley's federal constitutional claims through 42 U.S.C. § 1983.

15.    Tyler Bouma, Executive Director of Marion County Community Corrections, is named in his individual capacity, for the purposes of Mr. Crumley's federal constitutional claims through 42 U.S.C. § 1983.

16.    JoAnna Sahm, a Deputy with the MCSO, is named in her individual capacity, for the purposes of Mr. Crumley's federal constitutional claims through 42 U.S.C. § 1983.

17.    Captain Robert D. Frederick with the MCSO, is named in his individual capacity, for the purposes of Mr. Crumley's federal constitutional claims through 42 U.S.C. § 1983.

18.    Captain Diedra D. Baker with the MCSO, is named in her capacity, for the purposes of Mr. Crumley's federal constitutional claims through 42 U.S.C. § 1983.

19.     Deputy Chief Tanesha S. Crear, Jail Division Commander for the MCSO, is named in her individual capacity, for the purposes of Mr. Crumley's federal constitutional claims through 42 U.S.C. § 1983.

20.     Lieutenant William Weaver of the MCSO is named in his individual capacity, for the purposes of Mr. Crumley's federal constitutional claims through 42 U.S.C. § 1983.

21.     Officer Foxworthy, (ID 41380), an officer with the MCSO, is named in his individual capacity, for the purposes of Mr. Crumley's federal constitutional claims through 42 U.S.C. § 1983.

## IV.   FACTS

22.     On October 13, 2017, Mr. Crumley was arrested and detained by IMPD officers.

23.     Because Mr. Crumley was displaying behaviors indicative of a medical issue, the responding officers first transported Mr. Crumley to Eskenazi Health for a detention hold and psychiatric evaluation.

24.     During this evaluation, Eskenazi staff opined that because of his disability, the jail staff would not be able to meet Mr. Crumley's medical and behavioral needs, and he should be released from custody. However, against medical advice, IMPD and/or MCSO officers made the decision to transport Mr. Crumley to the Marion County Jail.

25.     Mr. Crumley was then incarcerated within the Marion County Jail from October 13 to 16, 2017.

26.     While in the care and custody of the IMPD and/or MCSO, Mr. Crumley suffered unexplained injuries that required outside emergency medical attention, did not receive his prescribed medications, and was only provided increased supervision to maintain his safety *after* another inmate alerted the officer on duty that Mr. Crumley was in danger.

27.     While in custody of MCSO, the defendants failed to provide his necessary, prescribed medications, accommodate his disability, or support his behavioral and medical needs. As a result, Mr. Crumley suffered a serious decline in his health that required emergency hospitalization and stabilization upon release from custody.

## A.  ARREST AND ESKENAZI PSYCHOLOGICAL EVALUATION

28.     On October 13, 2017, IMPD Officer Khyree Jones, assisted by IMPD Officer Marcus Riley, was dispatched to 5102 N Keystone, Indianapolis, IN 46235 in response to a call that someone was witnessed throwing a bottle. Officer Jones encountered Mr. Crumley, among others, when he arrived.

29.     Mr. Crumley was at the scene with his housemate and a ResCare staff person, Femisola Olubayo.  Due to his disability, Mr. Crumley resided in a group home staffed by ResCare.

30.     Despite being responsible for the care and safety of Mr. Crumley, Olubayo could not provide information regarding Mr. Crumley's diagnoses when asked by the responding officers.

31.     ResCare supervisor Nathan Crim then arrived on scene. While he provided limited information about Mr. Crumley's diagnoses, he was unable to provide identifying information, such as Mr. Crumley's full name or date of birth – instead, he reported to the officers that he would need to research that information.

32.     Mr. Crumley was then transported by EMS 0314, followed by Officer Jones, to Eskenazi Emergency Department for a detention hold and psychological evaluation.

33.     The evaluation completed by Eskenazi medical staff found that Mr. Crumley was unable to respond to more than a few sentences and was speaking at a two to three-year-old level.

The report states that he has an involved mother and that he resides in a group home. Records reveal that Mr. Crumley was distressed in response to the environment and being handcuffed.

34.     Due to his significant intellectual disability, Mr. Crumley was unable to answer even the most typical interview questions.

35.     Mr. Crumley was extremely agitated in the holding room. Eskenazi records state that he kept pulling at his hands and feet that were still in handcuffs which made his hands red. Further, Mr. Crumley yelled to be taken to the bathroom every five minutes, and yelled "get out of these tapes," referring to the handcuffs, and, "to go home, back home to my mom."

36.     Eskenazi staff stated it was apparent that Mr. Crumley was at a very low intellectual functioning age and that his current symptoms of physical and verbal agitation and anxiety require one-on-one attention. Mr. Crumley was unable to comprehend even the most basic instructions or follow through on any coping strategies.

37.     Due to his behavioral concerns and the concern for his medication management within the jail, Eskenazi staff advocated for Mr. Crumley's release from custody.

38.     The Eskenazi psychological evaluation notes that Eskenazi staff expressed concerns regarding Mr. Crumley's medication management, and issues with past incarceration, to Officer Jones and Eskenazi advocated for Mr. Crumley's release. The concerns further included the fact that Mr. Crumley was operating at a two or three year old level. However, Officer Khyree Jones refused and kept Mr. Crumley in custody.

39.     Despite Mr. Crumley's inability to understand what was occurring or why he was in custody, IMPD and/or MCSO officers refused to release or accommodate Mr. Crumley.

40.     Eskenazi attempted to establish a plan regarding crisis intervention and supportive counseling as best as possible with the limits of Mr. Crumley's intellectual disability. It was

7

requested that jail staff keep Mr. Crumley on self-safety precautions and closely monitor his behaviors and medications.

41.     Despite Mr. Crumley's need for regimented medication management and behavioral support, and against the opinion of Eskenazi staff, he was transferred to the Marion County Jail and placed on a unit without adequate supervision or support.

## B.  INCARCERATION WITHIN THE MARION COUNTY JAIL

42.     Mr. Crumley was booked into the Marion County Jail, from the Eskenazi emergency department.

43.     MCSO staff, including relevant classification personnel, were, or should have been, on notice that Mr. Crumley was functioning at a low level and resided in a group home at the time he was booked into the jail.

44.     Pursuant to Policy # JP2-2(D)(5), any special management issues which apply to an inmate that may warrant attention and possible intervention by staff shall be taken into consideration before classification makes a housing assignment. However, despite being aware of the fact that Mr. Crumley required special housing or heighted supervision because of his disability, he was placed in general population, or a minimally supervised unit, and at risk of harm.

45.     Upon information and belief, defendants Tyler Bouma, JoAnna Sahm, Robert Frederick, Deidra Baker, Tanesha Creater, William Weaver, through their positions within the MCSO and duties within the Marion County Jail, are responsible for, among other things, making classification decisions and ensuring all inmates are provided appropriate staffing and housing placement. Through their positions and pursuant to MCSO policies, they were on notice, or should have been on notice, of Mr. Crumley's supervision needs upon being booked into the jail.

46.     While detained within the Marion County Jail, records indicate that on October 14, 2017, Mr. Crumley was designated under the hazard code, "mental health segregation" and "mental hazard." (pg. 3).

47.     However, upon information and belief, Mr. Crumley remained in general population or a unit with insufficient supervision to maintain his safety or accommodate his disability.

48.     Upon information and belief, Mr. Crumley could not understand the standards, rules or procedures of the jail, unlike offenders who do not have a disability.

49.     On October 15, 2017, at 1:20 a.m., Nurse Teresa Pierce created a note in Mr. Crumley's records stating that he was to be considered a medical priority due to a medical condition.

50.     On October 15, 2017, at 1:21 a.m. Nurse Pierce then wrote an email to Defendants Tyler Bouma, JoAnna Sahm, Robert Frederick, Deidra Baker, Tanesha Creater and William Weaver informing them that Mr. Crumley was being made a medical priority due to his medical condition as he was a resident of a group home. MCSO custody and medical staff were aware of Mr. Crumley's needs when he was initially booked into the jail on October 13, as both the arresting officers and the Eskenazi evaluation completed at the request of IMPD and MCSO staff documented his history.

51.     However, Defendants Tyler Bouma, JoAnna Sahm, Robert Frederick, Deidra Baker, Tanesha Creater and William Weaver further failed to act and classify Mr. Crumley appropriately as a result of that email.

52.     On October 15, 2017, at approximately 12:25 pm, LPN Annette Smith entered a nursing progress note that during "med pass" she was called by custody staff to assess an inmate

who had fallen while being transported with other inmates. The inmate was identified as Mr. Crumley.

53.     Mr. Crumley's medical records state that he was unsteady on his feet and custody staff had him sit on the floor against a wall, yet fails to identify who was supervising him at that time or what had occurred prior to his fall.

54.     Mr. Crumley's suffered a laceration to his nose and possible edema. His nose was bleeding and his ankle was swollen. Nurse Smith opined that he may have suffered a fracture. Her note identifies that Mr. Crumley has a mental illness and resides in a group home. Further, Smith notes that Mr. Crumley had not been given his prescribed Clozapine 125 mg since his arrest on October 13, 2017.

55.     On October 15, 2017, An "ER/IP Referral Form" was requested by Dr. Bryan Buller to transfer Mr. Crumley to Eskenazi Health for emergency medical treatment. This was the second visit to Eskenazi since his arrest.

56.     The ER/IP Referral form states that Mr. Crumley had been in custody since October 13, 2017, and had not been administered Clozapine since his arrest.

57.     Defendant MCSO, and individual MCSO defendants, failed to properly classify Mr. Crumley's housing assignment and failed to provide necessary accommodations and staffing to maintain his safety.

58.     Mr. Crumley was transferred to Eskenazi where he was treated for his injuries and released back to the jail.

59.     On October 15, 2017, at approximately 10:15 p.m., inmates alerted officer Foxworthy (ID 41380) that Mr. Crumley was unable to take care of himself and needed to be removed from the housing unit. This was approximately twenty-one (21) hours after Nurse Piece

e-mailed Defendants regarding Mr. Crumley's classification designation putting Defendants on notice of Mr. Crumley's needs.

60.     MCSO documentation states that Mr. Crumley was running into walls, defecating himself, and was unable to communicate verbally. Upon information and belief, only after being contacted by *other inmates* did Officer Foxworthy take Mr. Crumley to the "SCU" for medical attention and a mental health evaluation. It appears that at that time, Mr. Crumley was placed on a suicide segregation code and heightened supervision.

61.     Defendants Nurse Pierce, Tyler Bouma, JoAnna Sahm, Robert Frederick, Deidra Baker, Tanesha Creater, William Weaver, and Officer Foxworthy all knew, or were on notice, that Mr. Crumley required this heightened level of staffing and behavioral supports, as it was well documented throughout his MCSO records. However, Defendants failed to classify or place Mr. Crumley in an appropriate part of the facility or provide adequate support staffing and accommodations. As a result, Mr. Crumley incurred physical, requiring outside emergency medical treatment, and mental injury.

62.     Officer Foxworthy had a duty to supervise Mr. Crumley, and the authority to transfer him from the unit he was placed upon to a more secure unit for medical attention, yet failed to do so until notified by other inmates that such action was necessary.

63.     After Officer Foxworthy notified classifications and Sergeant Jordan, a staff referral form, designated mental health, was also completed by registered nurse Pamela Hansen. This led to Mr. Crumley being placed in a single cell mental health block for safety after custody staff stated he was suicidal.

64.     Upon information and belief, Defendants Teresa Pierce, Tyler Bouma, JoAnna Sahm, Robert Frederick, Deidra Baker, Tanesha Creater, William Weaver and Officer Foxworthy

failed to take appropriate action to ensure that Mr. Crumley was a medical priority, placed in an appropriate unit with adequate and appropriate staffing or provided necessary supports or housing placement. Instead, Defendants allowed him to remain in general population, or a minimally supervised unit, and at risk of harm, until other offenders brought it to staff's attention that Mr. Crumley was in danger of harm.

## C. DENIAL OF MEDICATION

65.     Prior to being booked into the Marion County Jail, Mr. Crumley was taken to Eskenazi for a psychological evaluation. The evaluation specifically mentioned that he should not be incarcerated, in part, due to concerns regarding the jails ability to maintain his medication management.

66.     The Eskenazi evaluation, identified that Mr. Crumley was prescribed Clozapine (Clozarile) – 150 mg in the evening; 50 mg in the morning; and lithium, 450 mg, twice a day.

67.     However, Defendants failed to administer such medications within the jail, resulting in significant withdrawal and psychological and physical injuries.

68.     On October 15, 2017, at approximately 1:39 a.m., nurse Teresa Pierce signed a medical staff referral form ordering that Mr. Crumley have his blood drawn as soon as possible as he was prescribed Clozapine.

69.     Records indicate that a blood draw may have been taken on October 15, 2017, at approximately 1:36 p.m. However, Mr. Crumley was never administered his medications while within the custody of the MCSO.

70.     Yet, despite this referral and knowledge that Mr. Crumley required Clozapine, Nurse Pierce, and other treating medical professionals, failed to administer his medications or take

necessary steps to ensure he was administered his prescribed medications while in their custody and care.

71.     Patients are not to stop taking Clozaril without consulting a physician as the recommendation is to decrease the dose gradually.[2] Further, Eskenazi staff noted during Mr. Crumley's psychological evaluation that medication management was imperative and notified jail staff that his medications had to be monitored.

72.     When taken to Eskenazi for a psychiatric evaluation on October 13, 2017, Mr. Crumley was administered 150 mg of Clozaril at 9:32 p.m. He was also given haloperidol lactate 5mg at 9:36 p.m. and 2mg of lorazepam at 9:36 p.m. Upon information and belief, this was the last time he received this medication until after he was released from custody and taken back to Eskenazi for emergency stabilization.

73.     On October 16, 2017, a mental health progress note was generated within Mr. Crumley's MCSO records that stated "this writer informed Mr. Cram [with ResCare] that Mr. Crumley has not started his clozaril at this the [sic] MCJ." This document is electronically signed by Michael Sturm, scheduler, and Michael J. Schrettenbrunner, mental health professional.

74.     On October 16, 2017, Mr. Crumley was released from the Marion County Jail into the custody of his service provider, ResCare.

75.     When Mr. Crumley was released from jail, he was brought out by jail staff in a wheelchair. Mr. Crumley is ambulatory. ResCare staff observed that he was crying, in a fetal position, and was unable to talk. Staff observed that Mr. Crumley had suffered injuries to his nose

---

[2] See National Alliance on Mental Illness (NAMI), Clozapine (Clozarile and FazaClo), https://www.nami.org/Learn-More/Treatment/Mental-Health-Medications/Clozapine-(Clozaril-FazaClo) (last visited Oct. 1, 2019).

and face, including three stitches on his nose area. Mr. Crumley was immediately transported to the Eskenazi Hospital Emergency Room for an evaluation.

76.     At the emergency room, a complete blood count (CBC) with differential was performed and it was discovered that Mr. Crumley's white blood cell count was not within normal limits. ResCare staff also documented that they had provided Mr. Crumley's medication administration records to the jail and alerted jail staff to his current medication regime.

77.     Further, jail staff were contacted by ResCare staff when Mr. Crumley arrived at the emergency room, and it was confirmed that Mr. Crumley had not been provided with his medication while in custody of the Marion County Jail.

78.     Mr. Crumley required inpatient medical care from October 16 to October 19, 2017.

79.     During this hospitalization, Eskenazi physician Dr. Jayme Ahmed observed Mr. Crumley to communicate with long groans instead of verbal responses, and that he was unable to spontaneously converse in any way.

80.     Neurologically, Mr. Crumley displayed slowed movements of all extremities with weakness; unable to lift his arms above his head, or walk without assistance. He was unable to answer orientation questions.

81.     Mr. Crumley was functioning far below his baseline behavior. Mr. Crumley's physical exam revealed a bruise on his left, upper eyelid, a healing laceration on the bridge of his nose, bruising at left shoulder and left hand, and bilateral edema from ankle down. The cause of these injuries is unknown.

82.     On October 17, 2017, a medical entry by Dr. Jayme Ahmed opined that Mr. Crumley presented with a dramatic difference in his mental status than when she evaluated him on October 13, 2017.

83.     Medical records from Eskenazi confirm that Mr. Crumley had not had his lithium or clozapine (clozaril) for several days.

84.     Upon release from the Marion County Jail, Mr. Crumley's health and mental suffered significantly. He vomited multiple times, was visibly distressed and uncomfortable, his hypertonicity worsened, his neck was stiff in all directions, and he was in hyperreflexia. He was unable to move independently and could not even get up to go to the bathroom.

85.     Upon information and belief, Mr. Crumley experienced these debilitating symptoms due to the abrupt discontinuation of clozapine (clozaril), and stress of incarceration and conditions within the Marion County Jail.

86.     Mr. Crumley's misdemeanor battery charge in cause no. 49G19-1710-CM-039553 was dismissed in its entirety, by motion of the State, on May 30, 2018.

87.     Due to Mr. Crumley's disability, he was wholly reliant upon jail staff for his safety, support, and medical needs. Mr. Crumley has limited ability for self-care. MCSO staff failed to protect Mr. Crumley and failed to provide appropriate care and supports during his incarceration. This resulted in Mr. Crumley suffering physical injuries requiring emergency medical attention, and suffering from withdrawal of medications leading to significant mental decline. The cause of Mr. Crumley's physical injuries is still unknown.

## V.   CLAIMS FOR RELIEF

### A.  DISABILITY RIGHTS CLAIMS

### COUNT I

### THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12132
### (MARION COUNTY SHERIFF'S OFFICE and
### CORRECT CARE SOLUTIONS)

88.     Mr. Crumley incorporates by reference all allegations of the foregoing paragraphs as though set forth herein.

89.     Under Title II of the ADA, Defendant Marion County Sheriff's, the entity responsible for the operations of the Marion County Jail is prohibited from discriminating against qualified individuals with disabilities by denying them the benefits and services afforded to individuals without disabilities.

90.     By policy, practice, or procedure, or through their employees, based on the facts above, these Defendants discriminated against Mr. Crumley on the basis of and because of his disabilities by denying him the benefits, programs, and services afforded to individuals without disabilities and by denying him reasonable accommodations.

91.     Defendant Correct Care Solutions as a private entity are further proscribed from discriminating against an individual on the basis of disability and denying that individual the full and equal enjoyment of its services, facilities, privileges, advantages, and accommodation, but did so in violation of Title III of the ADA, 42 U.S.C. § 12181 et seq., 28 C.F.R. 36.01 et seq.

92.     As a result of the intentional, willful, and wanton wrongdoing of these Defendants, Mr. Crumley suffered physical injury, pain, mental anguish, emotional distress, trauma, and other damages and injury.

## COUNT II

**SECTION 504 of the REHABILITIATION ACT, 29 U.S.C. § 794a**
**(MARION COUNTY SHERIFF'S OFFICE and CORRECT CARE SOLUTIONS)**

93.     Mr. Crumley incorporates by reference all allegations of the foregoing paragraphs as though set forth herein.

94.     Under Section 504 of the Rehabilitation Act, Defendant Marion County Sheriff's, the entity responsible for the operations of the Marion County Jail, and Defendant Correct Care

Solutions, the entity responsible for providing medical care within the jail, as recipients of U.S. federal financial assistance is prohibited from discriminating against a qualified individual with a disability by denying him the benefits and services or participation in any program or activity.

95.     By policy, practice, or procedure, or through their employees, based on the facts above, these Defendants discriminated against Mr. Crumley on the basis of and because of his disabilities by denying him the benefits, programs, and services afforded to individuals without disabilities and by denying him reasonable accommodations.

96.     Defendant Correct Care Solutions as a private entity acting in the public realm as a recipient of federal fund is proscribed from discriminating against an individual on the basis of disability and denying that individual the full and equal enjoyment of its services, facilities, privileges, advantages, and accommodation.

97.     As a result of the intentional, willful, and wanton wrongdoing of these Defendants, Mr. Crumley suffered physical injury, pain, mental anguish, emotional distress, trauma, and other damages and injury.

## COUNT III

**THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12132**
**(CHIEF OF POLICE BRYAN K. ROACH and THE INDIANPOLIS**
**METROPOLITAN POLICE DEPARTMENT.)**

98.     Mr. Crumley incorporates by reference all allegations of the foregoing paragraphs as though set forth herein.

99.     Under Title II of the ADA, Defendants Bryan K. Roach, in his official capacity as the Chief of Police, and the Indianapolis Metropolitan Police Department are prohibited from discriminating against qualified individuals with disabilities by denying them the benefits and services afforded to individuals without disabilities.

100. By policy, practice, or procedure, or through their employees, based on the facts above, these Defendants discriminated against Mr. Crumley on the basis of and because of his disabilities by denying him the benefits, programs, and services afforded to individuals without disabilities and by denying him reasonable accommodations.

101. As a result of the intentional, willful, and wanton wrongdoing of these Defendants, Mr. Crumley suffered physical injury, pain, mental anguish, emotional distress, trauma, and other damages and injury.

## COUNT IV

### SECTION 504 of the REHABILITIATION ACT, 29 U.S.C. § 794a
### (CHIEF OF POLICE BRYAN K. ROACH and THE INDIANPOLIS
### METROPOLITAN POLICE DEPARTMENT)

102. Mr. Crumley incorporates by reference all allegations of the foregoing paragraphs as though set forth herein.

103. Under Section 504 of the Rehabilitation Act, Defendants Bryan K. Roach, in his official capacity as the Chief of Police, and the Indianapolis Metropolitan Police Department, as recipients of U.S. federal financial assistance is prohibited from discriminating against a qualified individual with a disability by denying him the benefits and services or participation in any program or activity.

104. By policy, practice, or procedure, or through their employees, based on the facts above, these Defendants were aware of Mr. Crumley's need for a reasonable accommodations for his disability. Yet, Defendants instead discriminated against Mr. Crumley on the basis of and because of his disabilities by denying him the benefits, programs, and services afforded to individuals without disabilities and by denying him reasonable accommodations.

105.     As a result of the intentional, willful, and wanton wrongdoing of these Defendants, Mr. Crumley suffered physical injury, pain, mental anguish, emotional distress, trauma, and other damages and injury.

## B.  CONSTITUTIONAL RIGHTS CLAIMS

## COUNT V

## FOURTH & FOURTEENTH AMENDMENTS: DELIBERATE INDIFFERENCE TO THE U.S. CONSTITUTION (IMPD OFFICER KHYREE JONES)

106.     Mr. Crumley incorporates by reference all allegations of the foregoing paragraphs as though set forth herein.

107.     This claim is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of Mr. Crumley's rights protected by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

108.     Khyree Jones, a police officer with the Indianapolis Metropolitan Police Department, is considered a "person" within the meaning of 42 U.S.C. § 1983.

109.     Officer Jones' actions and omissions were taken under the color of state law.

110.     Officer Jones had firsthand knowledge and observations of Mr. Crumley's medical needs as an individual with a disability yet failed to properly accommodate his disability, nor render or procure adequate care and supervision to ensure Mr. Crumley's safety.

111.     Officer Jones was deliberately indifferent to the treatment and needs of Mr. Crumley and as a result, Mr. Crumley experienced physical pain, bodily injury, mental and emotional distress, and other damages.

## COUNT VI

### FOURTH & FOURTEENTH AMENDMENTS: DELIBERATE INDIFFERENCE TO THE U.S. CONSTITUTION (MCSO INDIVIDUAL DEFENDANTS)

112.     Mr. Crumley incorporates by reference all allegations of the foregoing paragraphs as though set forth herein.

113.     This claim is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of Mr. Crumley's rights protected by the Fourth, Eighth, and Fourteenth Amendment to the United States Constitution.

114.     Individual named Defendants, Tyler Bouma, JoAnna Sahm, Robert Frederick, Deidra Baker, Tanesha Creater, William Weaver, and Officer Foxworthy ("MCSO Individual Defendants") all employed by the Marion County Sherriff's Office, specifically within the Marion County Jail, are each a "person" within the meaning of 42 U.S.C. § 1983.

115.     Each MCSO Individual Defendant was on notice of Mr. Crumley's needs and classification of being an offender with a significant disability and was in a position responsible to ensure proper classification within the jail and to provide appropriate staffing and supports to Mr. Crumley while he was incarcerated within the Marion County Jail. Each MCSO Individual Defendant had a duty to ensure he was protected from harm.

116.     Each MCSO Individual Defendant was deliberately indifferent to the needs of Mr. Crumley and as a result, Mr. Crumley experienced physical pain, bodily injury, mental and emotional distress, and other damages.

## COUNT VII

### FOURTH and FOURTEENTH AMENDMENTS: DELIBERATE INDIFFERENCE TO THE U.S. CONSTITUTION
### (NURSE TERESA PIERCE)

117.     Mr. Crumley incorporates by reference all allegations of the foregoing paragraphs as though set forth herein.

118.     This claim is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of Mr. Crumley's rights protected by the Fourth, Fourteenth and Eighth Amendments to the United States Constitution.

119.     Nurse Teresa Pierce, in her individual capacity, is considered a "person" within the meaning of 42 U.S.C. § 1983.

120.     Defendant Pierce's actions and omissions were taken under the color of state law as an employee of Defendant Correct Care Solutions, responsible for the medical care of inmates within the Marion County Jail.

121.     Pierce was on notice of, and deliberately indifferent to, the medical needs of Mr. Crumley.

122.     As a result of Pierce's deliberate indifference, Mr. Crumley experienced physical pain, bodily injury, mental and emotional distress, and other damages.

### VI.   JURY DEMAND

123.     Plaintiff requests a trial by jury.

### VII.  PRAYER FOR RELIEF

Wherefore, Mr. Crumley respectfully requests the Court for entry of a judgment that awards:

A.     Damages, including compensatory and punitive damages;

B.      Reasonable attorney's fees pursuant to 42 U.S.C. § 1988;

C.      Costs incurred in the prosecution of this action;

D.      All appropriate declaratory and injunctive relief; and

D.      All other just and proper relief.


                        Respectfully submitted,


                        *s/ Nikki G. Gray*
                        Nikki G. Gray, # 31209-49
                        Justin Schrock, # 32140-49
                        Indiana Disability Rights
                        4701 North Keystone Avenue, Suite 222
                        Indianapolis, Indiana 46205
                        (317) 722-3445
                        NGray@indianadisabilityrights.org
                        JSchrock@indianadisabilityrights.org
                        Attorneys for Plaintiff