UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEITH R. CRUMLEY by Next Friend, Shirley Crumley,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KERRY J. FORESTAL in his Official Capacity as Sheriff of Marion County,<br>MARION COUNTY SHERIFF'S OFFICE,<br>TERESA PIERCE in her individual capacity,<br>KHYREE JONES Officer, in his individual capacity,<br>TYLER BOUMA in his individual capacity,<br>JOANNA SAHM in her individual capacity,<br>ROBERT D. FREDERICK in his individual capacity,<br>DIEDRA D. BAKER in her individual capacity,<br>TANESHA S. CREAR in her individual capacity,<br>WILLIAM WEAVER in his individual capacity,<br>FOXWORTHY Officer (ID 41380), in his individual capacity, and<br>CITY OF INDIANAPOLIS,<br><br>　　　　　Defendants. | Case No. 1:19-cv-04110-TWP-DML |

**ORDER DENYING IN PART AND GRANTING IN PART
DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

　　This matter is before the Court on a Motion for Partial Judgment on the Pleadings filed pursuant to Federal Rule of Civil Procedure 12(c) by Defendant Teresa Pierce, RN ("Nurse Pierce") (Filing No. 38).[1] Plaintiff Keith R. Crumley ("Crumley") suffers from significant intellectual disabilities and mental health diagnoses. In his Amended Complaint, he alleges that

---

[1] This Motion was jointly filed by Nurse Pierce and then-Defendant Correct Care Solutions (aka Wellpath, LLC) (*see* Filing No. 38). But after the Joint Stipulation of Dismissal as to a Rehabilitation Act claim against Wellpath, LLC, (Filing No. 78), and the filing of Crumley's Amended Complaint, which dropped all other claims against Wellpath, LLC, (Filing No. 81, Filing No. 81-1), the Motion only remains pending as to Nurse Pierce as Wellpath, LLC is no longer a party to this action (*see* Filing No. 87).

he did not receive essential medication and behavioral support while in custody at the Marion County Jail (the "Jail") after officers of the Indianapolis Metropolitan Police Department ("IMPD") arrested and detained him after a witness reported him throwing a bottle, (Filing No. 81-1 at 1, 4–5, 12–15). Pertinent to this Order, Crumley brings claims for monetary and injunctive relief against Nurse Pierce—who is employed by Correct Care Solutions, an entity responsible for providing medical care to individuals incarcerated within the Jail—under 42 U.S.C. § 1983. *Id.* at 4, 16, 20. For the following reasons, Nurse Pierce's responsive Motion (Filing No. 38) is **denied in part and granted in part**.

## I.     BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion for judgment on the pleadings, the Court accepts as true the factual allegations in the Complaint and draws all inferences in favor of Crumley as the non-moving party. *See Emergency Servs. Billing Corp. v. Allstate Ins. Co.*, 668 F.3d 459, 464 (7th Cir. 2012).

On October 13, 2017, IMPD officers were dispatched to a scene where Crumley, who lived in group home ("ResCare") because of his diagnosed schizoaffective disorder, intermittent explosive disorder, and intellectual disabilities, had purportedly thrown a bottle (Filing No. 81-1 at 5–6). When the officers arrived, a ResCare staff member was present but could not provide much information about Crumley or his needs. *Id.* at 6. Although a ResCare supervisor arrived a little later and could offer some more details about Crumley, he was unable to provide identifying information, such as Crumley's full name or date of birth. *Id.*

Crumley was then transported by EMS, followed by an IMPD officer, to Eskenazi Hospital's emergency department ("Eskenazi") for a detention hold and psychological evaluation. *Id.* While there, medical staff observed that Crumley struggled to respond to questions and spoke

at a two-year-old or three-year-old level. *Id.* Crumley became increasingly agitated and distressed as he was handcuffed in the holding room, pulling at his hands until they were red, requesting to "get out of these tapes," yelling to go to restroom every five minutes, and asking "to go home, back home to my mom." *Id.* Noting Crumley's struggles and need for one-on-one attention, Eskenazi staff unsuccessfully requested that IMPD release him from custody. *Id.* at 7. Eskenazi staff attempted to establish a crisis intervention and supportive counseling plan, and asked that staff at the Jail keep Crumley on "self-safety precautions" and that they "closely monitor his behaviors and medications," which included a prescription for Clozapine (50 mg in the morning and 150 mg in the evening) and Lithium (450 mg twice daily). *Id.* at 7, 12. At the hospital, Crumley received 150 mg of Clozapine at 9:32 p.m., 5 mg of haloperidol lactate at 9:36 p.m., and 2 mg of lorazepam at 9:36 p.m. *Id.* at 13.

      Crumley was then transferred to the Jail. Despite his significant needs documented under the "mental health segregation" and "mental hazard" codes in Jail records on October 14, 2017, Crumley was placed in a minimally supervised general population unit. *Id.* at 8. In this setting, Crumley struggled to understand the standards, rules, and procedures of the Jail. *Id.* In the early morning hours of October 15, 2017, Nurse Pierce created a note in Crumley's records stating that he was a medical priority because of conditions. She then sent an email to various Jail staff informing them of this status. *Id.* at 9. At the same time, Nurse Pierce signed a medical staff referral form ordering a blood test for Crumley since he was prescribed Clozapine, a drug that should only be discontinued under a doctor's supervision and in a gradual manner. *Id.* at 12. Around noon that day, Crumley fell and injured himself while being transported with other inmates. *Id.* at 9. The nurse evaluating Crumley noted that his nose was bleeding, that his ankle was swollen (and possibly fractured), that he suffered from a mental illness and lived in a group

home, and that he had not received Clozapine since his arrest three days earlier on October 13, 2017. *Id.* at 9–10.

Crumley was then transferred back to Eskenazi, where he was treated for his injuries and released back to the jail. *Id.* at 10. Around this time, his blood was drawn. *Id.* at 12. Later that night—nearly a day after Nurse Pierce sent her email—inmates alerted Jail staff that Crumley could not take care of himself and requested that he be removed from the general population unit. *Id.* at 10. During his time in this unit, Crumley ran into walls, defecated on himself, and did not speak. *Id.* Following this report, staff took Crumley for additional medical attention and a mental health evaluation, eventually placing him in a single cell mental health block on a suicide segregation code and on heightened supervision. *Id.* at 10–11.

The next day, October 16, 2017, Crumley was released from the Jail, with Jail staff informing ResCare staff that he had not received any Clozapine since he was initially at Eskenazi. *Id.* at 13. Though he was ordinarily ambulatory, Crumley was brought out of the Jail in a wheelchair while he cried, curled into the fetal position, and failed to communicate verbally. *Id.* Noting these unmissable concerns, along with the fact that he appeared to have an injured face and stitches on his nose, ResCare transported Crumley directly from the Jail to Eskenazi. *Id.*

Back at Eskenazi again, Crumley's white blood cell count was found to be outside normal levels, and he was admitted for in-patient care, ultimately staying there for three days until October 19, 2017. *Id.* at 13–14. During this hospitalization, physician Dr. Jayme Ahmed observed that Crumley communicated only with long groans and was incapable of talking or answering questions. *Id.* at 14. Additionally, he exhibited slowed and weakened movement of his extremities, was unable to lift his arms over his head, and could not walk without assistance. *Id.* Examination also revealed a bruised eyelid, a cut on the bridge of his nose, bruising of a shoulder

4

and hand, and swelling of an ankle. *Id.* Dr. Ahmed, who had examined Crumley on October 13, 2017, opined in a medical entry that she noticed a "dramatic difference in his mental state"; and he was functioning far below his baseline behavior. *Id.* Moreover, upon his release from Jail, Crumley "vomited multiple times, was visibly distressed and uncomfortable, his hypertonicity worsened, his neck was stiff in all directions, and he was in hyperreflexia. He was unable to move independently and could not even get up to go to the bathroom." *Id.*

A misdemeanor battery charge against Crumley was dismissed in its entirety, by motion of the State, on May 30, 2018. *Id.* at 15. Pertinent to this Order, Crumley brings claims in his Amended Complaint for monetary and injunctive relief against Nurse Pierce individually, under 42 U.S.C. § 1983, alleging that she "was on notice of, and deliberately indifferent to, the medical needs of [ ] Crumley," which led to him experiencing "physical pain, bodily injury, mental and emotional distress, and other damages." *Id.* at 4, 20.

Though Nurse Pierce moved for partial judgment on the pleadings in response to Crumley's original Complaint (*see* [Filing No. 38](#); [Filing No. 1](#)), the Court will resolve this motion as it relates to the Amended Complaint since the claim against Nurse Pierce remains the same (*see* [Filing No. 87 at 1](#) (noting that the "previously filed Motion for Partial Judgment on the Pleadings only remains pending as to Nurse Teresa Pierce") (citation omitted)).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the parties have filed a complaint and an answer, and the pleadings are closed. Rule 12(c) motions are analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 633 (7th Cir. 2007); *Frey v. Bank One,* 91 F.3d 45, 46 (7th Cir. 1996). The complaint must allege facts that are "enough to raise a right to relief above the

5

speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.* Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (internal citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Like a Rule 12(b)(6) motion, the court will grant a Rule 12(c) motion only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend,* 163 F.3d 449, 452 (7th Cir. 1998) (*quoting Craigs, Inc. v. Gen. Elec. Capital Corp.,* 12 F.3d 686, 688 (7th Cir. 1993)). The factual allegations in the complaint are viewed in a light most favorable to the non-moving party; however, the court is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *Id.* (*quoting R.J.R. Serv., Inc. v. Aetna Cas. & Sur. Co.,* 895 F.2d 279, 281 (7th Cir. 1989)). "As the title of the rule implies, Rule 12(c) permits a judgment based on the pleadings alone. . . . The pleadings include the complaint, the answer, and any written instruments attached as exhibits." *Id.* (internal citations omitted).

### III. DISCUSSION

Nurse Pierce seeks a judgment on the pleadings with respect to Crumley's claims for injunctive and monetary relief against her under 42 U.S.C. § 1983. The Court will first address the § 1983 claim, before turning to the claim for injunctive relief.

In the Amended Complaint, Crumley asserts that his claim brought against Nurse Pierce pursuant to 42 U.S.C. § 1983 proceeds under "the Fourth, Fourteenth and Eighth Amendments to the United States Constitution." (Filing No. 81-1.) In his reply brief, however, Crumley articulates that this claim should be analyzed under the Fourth Amendment's "objectively unreasonable" standard because he "was, at all times relevant, a pretrial detainee." (Filing No. 48 at 4–5.) He also asserts that the case should additionally be examined under the Fourteenth Amendment, noting that "[t]he Seventh Circuit has established that a Fourteenth Amendment claim by pretrial detainee, such as Mr. Crumley, need only establish that the defendant's conduct was objectively unreasonable." *Id.* at 11–12 (citation omitted). But these standards do not concurrently apply in cases: "Before a finding of probable cause, the Fourth Amendment protects an arrestee; after such a finding, the Fourteenth Amendment protects a pretrial detainee." *Pulera v. Sarzant*, 966 F.3d 540, 549 (7th Cir. 2020). Crumley asserts under both contentions that he was a "pretrial detainee," so it seems the Fourteenth Amendment would apply. *See id.* But Crumley also argues "that Claims regarding conditions of confinement for pretrial detainees *who have not yet had a judicial determination of probable cause* (a *Gerstein* hearing), are governed by the Fourth Amendment and its objectively unreasonable standard," which seems to indicate he was an "arrestee". (Filing No. 48 at 4–5 (emphasis added).)

Crumley's confusion on the applicable standard does not obstruct the Court's determination of his claim. Either way, because "the standards are now effectively the same for judging the adequacy of custodial medical care under either Amendment," *Pulera*, 966 F.3d at 550, the Court will evaluate the objective reasonableness of Nurse Pierce's conduct. In other words, under both the Fourth and Fourteenth Amendments, it is Crumley's "burden to provide evidence that [Nurse Pierce's] actions were 'objectively unreasonable' and caused his injuries." *Id.* (citing *Miranda v.*

7

*Cty. of Lake*, 900 F.3d 335, 347, 352 (7th Cir. 2018) (Fourteenth Amendment); *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011) (Fourth Amendment)).[2] "Reasonableness," in both instances, "must be determined in light of the totality of the circumstances." *Id.* (citations omitted). Four factors aid the Court in examining this reasonableness of custodial medical care in the context of the circumstances: (1) a defendant's knowledge "of the arrestee's medical need"; (2) "the seriousness of the medical need"; (3) "the scope of the requested treatment"; and (4) "police interests." *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007).

Nurse Pierce argues that Crumley fails to state a claim against her under § 1983 because the facts, as pled, "show that the limited care Nurse Teresa Pierce provided to Mr. Crumley was adequate and reasonable under the circumstances." (Filing No. 38 at 2.) In her brief, Nurse Pierce argues that she acted reasonably when, as Crumley acknowledges, she

> 1) created a note within Mr. Crumley's records to make Mr. Crumley a medical priority; 2) emailed custody staff informing them that Mr. Crumley was a medical priority so he could be properly classified and housed within the Marion County Jail; and 3) signed a medical referral form ordering that Mr. Crumley receive a blood draw as soon as possible so he could be administered his prescribed Clozapine.

(Filing No. 39 at 11). Indeed, Nurse Pierce continues, Crumley "does not even allege that Nurse Pierce examined Mr. Crumley," or that she "was responsible for any classification determinations or for deciding where Mr. Crumley was housed," or that she "had anything to do with the failure to execute the medical referral signed by Nurse Pierce to get Mr. Crumley a blood draw." *Id.* She contends that she "cannot be responsible for the actions or inactions of other individuals" ignoring her warnings. *Id.* Nurse Pierce argues that the Amended Complaint contains no allegations of

---

[2] While the Fourteenth Amendment inquiry includes an additional assessment of whether "medical defendants acted purposefully, knowingly, or perhaps recklessly when they considered the consequences of their handling of [a plaintiff's] case," *Miranda v. Cty. of Lake*, 900 F.3d 335, 353 (7th Cir. 2018), since the parties do not meaningfully discuss this prong (*see* Filing No. 39 at 10; Filing No. 48 at 12), the Court will only evaluate the Fourth and Fourteenth Amendments' shared reasonableness prong.

8

objectively unreasonable behavior on her part when she "attempt[ed]to get Mr. Crumley both an appropriate classification and housing assignment[ ] and referr[ed] Mr. Crumley for a blood draw so his prescribed medication could be filled." *Id.* at 12.

In response, Crumley asserts that Nurse Pierce attempts to narrow her "involvement in the care she provided to Mr. Crumley and evade liability by framing Mr. Crumley's complaint as to allege that he suffered harm only as a result of other individuals failing to respond to Pierce's warning about the care Mr. Crumley required." ([Filing No. 48 at 5](Filing No. 48 at 5).) This contention, Crumley argues, disregards his "allegations that Nurse Pierce herself was objectively unreasonabl[e] in her care of his medical need *because* she failed to take further steps to ensure and verify that he received his prescription medications or was moved to a more appropriate unit to meet his needs as a medical priority." *Id.* (Emphasis in original.) Crumley further argues that he "had an objectively serious medical condition in that he required his prescription medications to avoid physical withdrawal symptoms, and supports for behavioral management." *Id.* at 11. Because he "was unable to answer even the most typical interview questions due to his significant intellectual disability," at Eskenazi—and it "can be reasonably inferred that his level of functioning did not improve once transferred to jail and during his interaction with Nurse Pierce"—Nurse Pierce "cannot dispute that she had first-hand knowledge of Mr. Crumley's serious medical and behavioral needs," especially since "she entered a note in his chart that he was considered to be a medical priority due to his medical condition and because he received residential supports in the community." *Id.* Moreover, instead of her "inaction," "Nurse Pierce had an available avenue to alert additional medical or custody staff that Mr. Crumley may need to be transported to the hospital for monitoring of his medical symptoms, medications or other needs." *Id.* at 12. Moreover, "Nurse Pierce had objective knowledge of a serious risk to Mr. Crumley's health and

Case 1:19-cv-04110-TWP-DML   Document 93   Filed 01/08/21   Page 10 of 14 PageID #: 662

safety, yet she acted with disregard of those concerns and simply passed him along to other staff members rather than ensuring his needs were actually met." *Id.* at 15.

In reply, Nurse Pierce maintains that Crumley's response brief "appears to paint Nurse Pierce as an omniscient supervisor of all staff in the Marion County Jail that is responsible for everything that goes on in the jail 24/7". ([Filing No. 49 at 6](#).) Though Crumley asserts "Nurse Pierce should have done more to ensure Mr. Crumley was placed in an appropriate housing assignment," he "does not allege Nurse Pierce was responsible for any classification determinations or for deciding where Mr. Crumley was housed." *Id.* But while she tried "to provide individuals who did do those things with all the appropriate information necessary," she "cannot be responsible for the actions or inactions of other individuals." *Id.* at 7. Moreover, while Crumley argues that Nurse Pierce "should have done more to ensure he was provided adequate staffing and accommodations," he only alleges that she was involved in his care and "working at the jail between 1:20 AM and 1:40 AM on October 15, 2017." *Id.* Further, while Crumley "attempts to hold Nurse Pierce responsible for not ensuring that" he received his medicine, "she referred Mr. Crumley for a blood draw ASAP due to his prescription medication." *Id.* Crumley "does not allege that Nurse Pierce was the individual who failed to either draw Mr. Crumley's blood or provide Mr. Crumley with his medication"; instead, he "merely alleges Nurse Pierce took action to provide appropriate medical care to Mr. Crumley, but her orders and/or recommendations were not heeded." *Id.* at 7–8. Further, while Crumley "alleges in a conclusory nature that Nurse Pierce was on notice of, and 'deliberately indifferent to,' the medical needs of Mr. Crumley," his "Complaint does not even plead that Nurse Pierce *actually had any* interaction with Mr. Crumley whatsoever." *Id.* at 8 (emphasis in original). Altogether, though Crumley "contends that the 'complaint is devoid of additional actions that Nurse Pierce took to treat or evaluate Mr. Crumley,'"

10

Nurse Pierce was not, according to the facts pled in the Amended Complaint, "involved in or responsible for anything beyond the three referrals and recommendations made between 1:20 AM and 1:40 AM on October 15, 2017." *Id.* at 9. At that time, "Nurse Pierce took multiple steps in an attempt to provide appropriate and reasonable medical care to Mr. Crumley in the form of attempting to get Mr. Crumley both an appropriate classification and housing assignment, and referring Mr. Crumley for a blood draw so his prescribed medication could be filled." *Id.* She cannot now be held "responsible for everything that happened after her recommendations allegedly went unheeded regardless of whether she had any role in those determinations, or ever even saw Mr. Crumley, or was even working at the jail when those determinations were made." *Id.*

A jury could conclude, based on Crumley's Amended Complaint, that Nurse Pierce acted objectively unreasonably when she failed to ensure he received vital medication and care. Nurse Pierce contends that the Amended Complaint does not allege that she "was involved in Mr. Crumley's care whatsoever beyond that twenty-minute interval." (Filing No. 49 at 6.) But the absence of her involvement following this period is precisely what could lead to a jury finding she did not act in an objectively reasonable manner when she did nothing after she elevated Crumley to a medical priority upon his arrival, emailed other staff members of this prioritized status, and requested blood work, (*see* Filing No. 81-1 at 9). At the time of Nurse Pierce's documented activity, Crumley had already gone two days without Clozapine, medication that, again, should not be discontinued "without consulting a physician as the recommendation is to decrease the dose gradually." *Id.* at 12–13. And after Nurse Pierce's actions, Crumley went another day without this critical medicine and spent time in the unsupervised general population unit before his release from the Jail, at which time his condition had precipitously deteriorated. *Id.* at 13–14. A jury could, based on these facts, conclude that Nurse Pierce should have done more to aid Crumley in

11

receiving the attention he needed. *Cf. McCann v. Ogle Cty., Illinois*, 909 F.3d 881, 887 (7th Cir. 2018) (holding that a nurse's care of a pretrial detainee suffering from severe burns "was diligent and attentive"—and objectively reasonable—when she "checked and documented [his] condition every 5 to 15 minutes, while also regularly changing his bandages, bathing him, and serving him meals," when she "asked her colleagues to call her day or night if [his] condition worsened" while off duty, and when she "voluntarily came in on a weekend to assist him with taking a shower").

Similarly, a jury was tasked with determining the objective reasonableness of an officer's conduct when she created a detainee's "screening record, making note of the fact that [he] suffered from and took medications for various serious medical conditions," was on duty twice when the detainee "yelled out a request for a doctor" from her cell, and could infer that because the detainee "had never left the lockup, she had not had access to any of her medications." *Ortiz*, 656 F.3d at 532. Likewise, a jury was required to decide the objective reasonableness of two doctors' conduct after they "deliberately chose a 'wait and see' monitoring plan, knowing that [the detainee] was neither eating nor drinking nor competent to care for herself." *Miranda*, 900 F.3d at 354. And a jury was charged with determining whether two nurses acted in an objectively reasonable way when one nurse observed blood on a pretrial detainee's "spit mask" but "did not take his vitals or even touch him" for a several minutes and the other "chose to stand at the nurses' station to observe [the detainee] rather than render any treatment" before later removing the bloodied mask. *Estate of Perry v. Wenzel*, 872 F.3d 439, 458 (7th Cir. 2017). Comparable to the circumstances of these cases, Crumley, at this stage, has alleged sufficient facts for a jury to conclude that Nurse Pierce's conduct (or lack thereof) was objectively unreasonable based on her knowledge of Crumley's exceptionally serious medical needs. Judgment on the pleadings, then, is not warranted, and Nurse Pierce's Motion is **denied** as it relates to Crumley's § 1983 claim against her.

Concerning his claim for injunctive relief, Nurse Pierce asserts that Crumley has completely failed to respond to her argument that this claim is moot because he is no longer incarcerated (neither "injunctive" nor "injunction" appear anywhere in his response brief (*see generally* Filing No. 48)). The Court agrees and concludes that Crumley has waived any argument that this claim should not be dismissed. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (A "complete lack of development of [an] argument is sufficient to find waiver."). Accordingly, Nurse Pierce's Motion is **granted** as it pertains to injunctive relief against her.

## IV.  CONCLUSION

For the foregoing reasons, the Court **DENIES IN PART and GRANTS IN PART** Nurse Pierce's Motion for Judgment on the Pleadings (Filing No. 38). This action may proceed against her on Crumley's claim under § 1983 but not for injunctive relief.

**SO ORDERED.**

Date:  1/8/2021

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Thomas E. Crishon
INDIANA DISABILITY RIGHTS
tcrishon@indianadisabilityrights.org

Justin C. Schrock
INDIANA DISABILITY RIGHTS
jschrock1@indianadisabilityrights.org

Nikki G. Gray
INDIANA DISABILITY RIGHTS
ngray@indianadisabilityrights.org

Carol A. Dillon
BLEEKE DILLON CRANDALL, P.C.
carol@bleekedilloncrandall.com

Christopher Andrew Farrington
BLEEKE DILLON CRANDALL ATTORNEYS
drew@bleekedilloncrandall.com

Anthony W. Overholt
FROST BROWN TODD LLC (Indianapolis)
aoverholt@fbtlaw.com

Alexander Phillip Will
FROST BROWN TODD LLC (Indianapolis)
awill@fbtlaw.com

Andrew J. Upchurch
OFFICE OF CORPORATION COUNSEL CITY OF INDIANAPOLIS
andrew.upchurch@indy.gov

Adam Scott Willfond
OFFICE OF CORPORATION COUNSEL CITY OF INDIANAPOLIS
adam.willfond@indy.gov