**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| **KEITH CRUMLEY, by Next Friend** | ) |
| **SHIRLEY CRUMLEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No. 1:19-cv-04110-TWP-DML** |
| | ) |
| **KERRY J. FORESTAL, in his official capacity** | ) |
| **as the Sheriff of Marion County, et al.** | ) |
| | ) |
| **Defendants.** | ) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
<u>PARTIAL MOTION FOR SUMMARY JUDGMENT</u>**

Nikki G. Gray (No. 31209-49)
Thomas E. Crishon (No. 28513-49)
Emily A. Munson (No. 29025-49)
Justin C. Schrock (No. 32140-49)
INDIANA DISABILITY RIGHTS
4701 North Keystone Avenue, Suite 222
Indianapolis, IN 46205
Tele:   (317) 722-3445
Fax:    (317) 722-5564
ngray@indianadisabilityrights.org
tcrishon@indianadisabilityrights.org
emunson1@indianadisabilityrights.org
JSchrock1@indianadisabilityrights.org

*Counsel for Plaintiff*

February 5, 2021

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iv

INTRODUCTION ..................................................................................................... i

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE...................................... i

    I.       Plaintiff Keith Crumley is a Person with a Disability.......... **Error! Bookmark not defined.**

    II.      Mr. Crumley's Arrest ............................................................................. 2

    III.   Immediate Detention at Eskenazi Hospital............**Error! Bookmark not defined.**

    IV.   Marion County Jail Intake and Medical Screening Process ................................. 5

    V.     Lack of Accommodations While in Intake Holding ................................ 7

    VI.   Transfer to Marion County Jail from Intake ..........**Error! Bookmark not defined.**

    VII.  Mental Health Unit ............................................................................ 9

    VIII. Release from Jail ............................................................................ 11

STANDARD OF REVIEW ........................................................................................ 1

ARGUMENT ........................................................................................................... 12

    I.       Mr. Crumley, is a Qualified Individual with a Disability Under the ADA and Section 504...................................................**Error! Bookmark not defined.**

    II.      Defendant City of Indianapolis Violated the ADA and Rehabilitation Act by Failing to Reasonably Accommodate Mr. Crumley's Disability..............**Error! Bookmark not defined.**

          A.    Greater injury or indignity than an arrestee without a disability. ......**Error! Bookmark not defined.**

          B.    Exigent circumstances not present.............**Error! Bookmark not defined.**

    III.   Mr. Crumley was Denied the Benefits of Services, Programs or Activities During His Incarceration within the Marion County Jail. ................................... 20

          A.    Denial of equal access to phone services. ................................................. 22

          B.    Denial of equal access to toileting and shower services. **Error! Bookmark not defined.**

          C.    The Marion County Sheriff failed to screen Mr. Crumley regarding a need for reasonable accommodations. ....**Error! Bookmark not defined.**

D.  Plaintiff was otherwise subjected to discrimination in violation of the ADA and Rehabilitation Act...............**Error! Bookmark not defined.**

1.  Mr. Crumley sustained injuries when being transported because of his disability.**Error! Bookmark not defined.**

2.  Disproportionate use of solitary confinement because of Mr. Crumley's disability.**Error! Bookmark not defined.**

E.  Staff and contractors of the Marion County Sheriff acted with deliberate indifference. ............................................................ 30

CONCLUSION.............................................................................**Error! Bookmark not defined.**

## __TABLE OF AUTHORITIES__

### __Cases__

*A.H. by Holzmueller v. Ill. High Sch. Ass'n,*
 881 F.3d 587 (7th Cir. 2018) ................................................................................................ 20

 *Alexander v. Choate,*
 469 U.S. 287 (1985) ............................................................................................................. 31

*Anderson v. Liberty Lobby, Inc.,*
 477 U.S. 242 (1986) ............................................................................................................. 12

*Beaver v. Melotte,*
 No. 08-C-187, 2008 WL 4610317 (E.D. Wisc. Oct. 15, 2008) ............................................. 27

*Bramlett v. Dart,*
 No. 14–C–5939, 2015 WL 4148711 (N.D. Ill. July 9, 2015) ................................................. 21

*Brown v. Ill. Cent. R.R. Co.,*
 254 F.3d 654 (7th Cir. 2001) ................................................................................................ 14

*Bultemeyer v. Fort Wayne Cmty. Sch.,*
 100 F.3d 1281 (7th Cir. 1996) .............................................................................................. 14

*Carothers v. Cnty. of Cook,*
 808 F.3d 1140 (7th Cir. 2015) .............................................................................................. 14

*Clemons v. Dart,*
 168 F. Supp. 3d 1060 (N.D. Ill. 2016) ....................................................................... 21, 25, 32

*Cook v. Illinois Dep't of Corr.,*
 2018 WL 294515 (S.D. Ill. 2018) ......................................................................................... 21

*Duvall v. Cty. of Kitsap,*
 260 F.3d 1124 (9th Cir. 2001) .............................................................................................. 31

*Earl v. Espejo,*
 2017 WL 3704826 (N.D. Ill. 2017) ....................................................................................... 14

*Estate of Robey by Robey v. City of Chicago,*
 2018 WL 688316 (N.D. Ill. 2018) ......................................................................................... 19

*Garfield v. Cook Cty.*
 2009 WL 4015553 (N.D. Ill. 2009) ....................................................................................... 27

*Gohier v. Enright*,
  186 F.3d 1216 (10th Cir. 1999) ........................................................................ 16

*Gray v. Cummings*,
  917 F.3d 1 (1st Cir. 2019) ................................................................................ 15

*Hamilton for J.H. v. City of Fort Wayne*,
  2017 WL 5467038 (N.D. Ind. 2017) ................................................................. 15

*Hildreth v. Butler*,
  960 F.3d 420 (7th Cir. 2020) .............................................................. 13, 20, 22

*Jaros v. Illinois Dep't of Corr.*,
  684 F.3d 667 (7th Cir. 2012) ...................................................................... 21, 22

*Kennington v. Carter*,
  No. IP02-0648-C-T/K, 2004 WL 2137652 (S.D. Ind. 2004) ...................... 13, 21, 31

*King v. Hendricks Cty. Commissioners*,
  954 F.3d 981 (7th Cir. 2020) ...................................................................... 15, 18

*Lacy v. Cook Cty.*,
  897 F.3d 847 (7th Cir. 2018) .............................................................. 13, 31, 32

*Love v. Westville Corr. Ctr.*,
  103 F.3d 558 (7th Cir.1996) ...................................................................... 12, 22

*Lovell v. Chandler*,
  303 F.3d 1039 (9th Cir.2002), *cert. denied,* 537 U.S. 1105 (2003) ............... 31

*Lynn v. City of Indianapolis*,
  2014 WL 3535554  (S.D. Ind. 2014) ................................................................. 19

*Palmer v. Circuit Ct. of Cook Cnty.*,
  117 F.3d 351 (7th Cir. 1997) ............................................................................ 14

*Penn. Dep't of Corr. v. Yeskey*,
  524 U.S. 206 (1998) .................................................................................... 20, 32

*Phipps v. Sheriff of Cook Cnty.*,
  681 F. Supp. 2d 899 (N.D. Ill. 2009) ............................................................... 25

*Pierce v. D.C.*,
  128 F. Supp. 3d 250 (D.D.C. 2015) .................................................................. 26

*Ravenna v. Vill. of Skokie*,
  388 F.Supp.3d 999 (N.D. Ill. 2019) ............................................................ 16, 19

*Rhodes v. Chapman,*
   452 U.S. 337 (1981) ............................................................................ 21

*S.H. ex rel. Durrell v. Lower Merion Sch. Dist.,*
   729 F.3d 248 (3rd Cir. 2013) ............................................................. 31

*Vaughn v. Walthall,*
   968 F.3d 814 (7th Cir. 2020) ............................................................. 12

*Wagoner v. Lemmon,*
   778 F.3d 586 (7th Cir. 2015) ....................................................... 12, 27

*Wisc. Cmty. Servs., Inc. v. City of Milwaukee,*
   465 F.3d 737 (7th Cir. 2006) ....................................................... 20, 22

## **Statutes**

29 U.S.C. § 794 ......................................................................................... 12

42 U.S.C. § 12102 ............................................................................... 13, 14

42 U.S.C. § 12132 ............................................................. 12, 15, 20, 27

Ind. Code § 35-33-4-1 ........................................................................ 4, 17

## **Rules**

Fed. R. Civ. P. 56 ...................................................................................... 12

## **Regulations**

28 C.F.R. § 35.130(b)(1) ..................................................................... 13, 21

28 C.F.R. § 35.130(b)(7) ............................................................................ 25

28 C.F.R. § 35.130(b)(1)(ii) ...................................................................... 21

28 C.F.R. § 35.150(a) .................................................................................. 20

28 C.F.R. § 35.152(b)(1) ............................................................................ 22

28 C.F.R. § 35.152(b)(2)(i)-(ii) ................................................................. 29

28 C.F.R. § 35.160(b)(1) ............................................................................ 21

29 C.F.R. § 1630.2(h)(2) ............................................................................ 14

## INTRODUCTION

Plaintiff, Keith Crumley, through his next friend Shirley Crumley, and by counsel, respectfully urges the Court to grant his partial motion for summary judgement against Defendants, the City of Indianapolis and the Elected Marion County Sheriff in his official capacity, for violations of his rights under the Title II of the Americans with Disabilities Act of 1990 ("ADA"), and Section 504 of the Rehabilitation Act ("Section 504"). There is no question that Defendants failed to provide Mr. Crumley, a individual with a profound intellectual disability and mental health diagnoses, with appropriate reasonable accommodations when IMPD Officer Jones chose to place Mr. Crumley under a custodial arrest, putting him at greater risk of harm and indignity because of his disability, and further that the staff and contractors within the Marion County Jail were wholly unequipped to provide Mr. Crumley with equal access to the most basic correctional services. Defendants' actions and inactions as described in this Memorandum of Law constitutes a violation of the ADA and Section 504.

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

### I.      Plaintiff Keith Crumley is a person with a disability.

Plaintiff Keith Crumley ("Mr. Crumley") is an individual with a disability including the following diagnoses: attention deficit hyperactivity disorder (ADHD), bipolar disorder, schizophrenia, and intellectual disability. (Ex. 1, Crumley dep. pg. 17, 12-19; pg. 21, 25; Ex. 2, Eskenazi Records pg. 3.) Plaintiff's Expert, Dr. Peter Leone, observed that due to his intellectual disability, Mr. Crumley has deficits in expressive and receptive language, difficulty expressing his needs and frequently does not understand what others expect of him. (Ex. 3, Leone Report pg. 1.) During his youth, Mr. Crumley was in special education classes and lived in several residential facilities due to his multiple disabilities. (Ex. 1, Crumley dep. pg. 16, 24-25; pg. 18, 3-11; pg. 21, 10-17.) Mr. Crumley is reportedly extremely low functioning and has lived in a group home setting

1

since he was seventeen years old. (Ex. 1, Crumley dep. pg. 26, 19-22; pg. 29, 21-23.) Mr. Crumley takes several medications to control symptoms related to his various disabilities including clozapine for treatment of schizophrenia. (Ex. 1, Crumley dep. pg. 41, 23-25; pg. 42, 1-4.) Previously, Mr. Crumley has become listless and even catatonic when he missed multiple doses of his clozapine. (Ex. 1, Crumley dep. pg. 46, 6-16; pg. 47, 9-20.)

## II.    Mr. Crumley's arrest

On October 13, 2017, Officer Khyree Jones ("Officer Jones") and Officer Marcus Riley ("Officer Riley") were dispatched to a local business in response to a disturbance. (Ex. 4, Jones dep. pg. 17, 23-25; Ex. 5, OAR.) Upon arrival, Officer Jones spoke with the reporting individual, who identified Mr. Crumley as the person who had been throwing rocks at his business and nearby cars. (Ex. 4, Jones dep. pg. 18, 8-11.) Officer Jones then approached Mr. Crumley and the individuals with him, which included one of his roommates and a group home supervisor, Nathan Crim ("Mr. Crim"). (Ex. 4, Jones dep. pg. 18, 12-14; pg. 19, 3-5, 23-24.). Mr. Crim informed Officer Jones that Mr. Crumley had earlier bit his roommate. (Ex. 4, Jones dep. pg. 18, 14-18; pg. 21, 12-17.) The roommate bitten by Mr. Crumley informed Officer Jones he wished to press charges. (Ex. 4, Jones dep. pg. 24, 18-20.) Neither Mr. Crim, nor his supervisor, were able to provide information about Mr. Crumley's diagnoses, prescription medications, or behavioral triggers. (Ex. 4, Jones dep. pg. 21, 17-25; pg. 23, 11-15.) Officer Jones did not ask whether Mr. Crumley had a legal guardian, nor did he make further efforts to obtain information about him. (Ex. 4, Jones dep. pg. 23, 22-24.)

Officer Jones then attempted to speak directly with Mr. Crumley, who did not provide verbal or nonverbal responses to even the most basic questions. (Ex. 4, Jones dep. pg. 25, 7-18, 24.). Mr. Crumley sat on the ground "kind of just looking around." (Ex. 4, Jones dep. pg. 25, 20-

21.). Officer Jones observed that Mr. Crumley appeared distant and was unable or unwilling to communicate. (Ex. 4, Jones dep. pg. 27, 4-5.) Officer Jones was unable to determine if Mr. Crumley understood what was said to him due to his lack of response. (Ex. 4, Jones dep. pg. 53, 10-16.) Officer Jones observed that if someone came close to Mr. Crumley, he made a humming sound and would scoot away and it was obvious that Mr. Crumley had a mental illness. (Ex. 4, Jones dep. pg. 27, 8-14, 17-21.) Mr. Crumley was then placed in handcuffs without issue. (Ex. 4, Jones dep. pg. 66, 21-23.) The officers were at the scene with Mr. Crumley for approximately an hour and at no time was he aggressive or threatening. (Ex. 4, Jones dep. pg. 30; 5-6; pg. 31, 8-13.)

After placing Mr. Crumley in handcuffs, Officer Jones contacted IMPD Behavioral Specialist Lance Dardeen ("Specialist Dardeen") for an assessment. (Ex. 4, Jones dep. pg. 27, 25; pg. 28; 1-10.) Officer Jones and Specialist Dardeen determined that Mr. Crumley would be placed under arrest for misdemeanor battery and taken to Eskenazi Hospital ("Eskenazi") to obtain medical treatment under an Immediate Detention.[1] (Ex. 4, Jones dep. pg. 29, 10-21; pg. 33, 18-20; pg. 37, 13, 17-20.) Officer Jones did not conduct an assessment as to whether Mr. Crumley required a reasonable accommodation during the arrest procedure, and believed he would need to be explicitly informed of Mr. Crumley's diagnoses prior to attempting to accommodate his disability. (Ex. 4, Jones dep. pg. 72, 23-25; pg. 73, 1; 74, 5-11.) Crumley was unable to express his need for accommodations and supports because of his disability. (Ex. 8, Leone dep. pg. 45, 19-25.) The City of Indianapolis is responsible for the functions, operations and services of the Indianapolis Metropolitan Police Department and is a recipient of federal funding. (Ex.9; City Interrog. Resp., pg. 2.)

---

[1] IMPD General Order 4.7 defines "Immediate Detention" as "[a] hold for up to twenty-four (24) hours, that can be initiated by a law enforcement officer, having reasonable grounds to believe an individual is: 1. Mentally ill; 2. An imminent danger to themselves or others or gravely disabled; and 3. In immediate need of hospitalization and treatment." (4.7; p. 2)

### III.   Immediate Detention at Eskenazi Hospital

Mr. Crumley was transported by ambulance to Eskenazi for an immediate detention to obtain a psychological evaluation, additional information regarding Mr. Crumley's functional status, and necessary medical treatment. (Ex. 4, Jones dep. pg. 41, 7; 46, 14-19.) Officer Jones placed Mr. Crumley under an immediate detention because he did not believe Mr. Crumley's care provider could manage his behaviors, he could not confirm when Mr. Crumley last took his medications, and because Officer Jones believed Mr. Crumley to be a threat to others based upon the nature of his alleged actions earlier in the day. (Ex. 4, Jones dep. pg. 62, 2-8; pg. 42, 8-18.) Mr. Crumley presented to Eskenazi unable to answer basic questions or respond to more than a few sentences. (Ex. 2, Eskenazi Records pg. 2, 4.) On October 13, 2017, at approximately 9:32 p.m., Mr. Crumley was administered 150 mg Clozapine (Clozaril) at the Eskenazi Emergency Department. (Ex. 2, Eskenazi Records pg. 4.). Eskenazi social worker Bobbi Shephard ("Ms. Shephard") contacted Officer Jones to advocate for Mr. Crumley's release from custody because she was concerned about his medication management. (Ex. 4, Jones dep. pg. 51, 6-24; pg. 54, 20-22.)

In response to a misdemeanor offense, Indiana law provides police officers with the option to issue a summons to appear in lieu of a custodial arrest. *See* Ind. Code § 35-33-4-1(f). Officer Jones had discretion to determine whether a custodial arrest of Mr. Crumley was necessary. (Ex. 4, Jones dep. pg. 55, 11-14; pg. 61, 10-16.) Officer Jones did not believe a summons arrest was appropriate due to Mr. Crumley's inability to communicate with officers to "promise to appear in court." (Ex. 4, Jones dep. pg. 58, 4-9; pg. 60, 17-18.) Officer Jones did not believe a summons arrest was appropriate, as Officer Jones would not have been notified prior to Mr. Crumley's release and he was concerned that Mr. Crumley's care provider could not properly manage his

4

behavior. (Ex. 4, Jones dep. pg. 59, 11-15; pg. 62, 2-8.) Behavioral Specialist Dardeen was not aware of a policy that would have prevented a summons arrest to be issued to Mr. Crumley in conjunction with an immediate detention. (Ex. 6 Dardeen Dep. pg. 34, 7-14.)

As Mr. Crumley did not meet acute inpatient admission criteria and Officer Jones did not release his charges nor issue a summons, Mr. Crumley was transferred to the Marion County Jail. (Ex. 11, Weaver dep. pg. 25, 2-7.) Social services are in a better position to respond to Mr. Crumley's needs than a police department or sheriff's office. (Ex. 8, Leone dep. pg. 97, 5-10.) The Marion County Sheriff is responsible for the functions and operations of the Marion County Jail and is a recipient of federal funding. (Ex. 12, MSCO Interrog. Resp., pg. 2.)

**IV.    Marion County Jail Intake and Medical Screening Process**

Mr. Crumley arrived at the intake processing center on October 14, 2017, at approximately 8:40 a.m. Mr. Crumley was placed in an isolated cell during the intake process due to his disability. (Ex. 11, Weaver dep. pg. 21, 21-15; pg. 22, 1; pg. 26, 17-18.) Defendant Nurse Pierce completed Mr. Crumley's medical intake screening at approximately 1:00 a.m. on October 15, 2017, which was approximately 16 hours after he arrived at the jail. (Ex. 14, Pierce dep. pg. 37, 11-13; pg. 40, 10-13; Ex. 11, Weaver dep. pg. 25; 2-7.) Nurse Pierce is aware that residents of group homes, such as Mr. Crumley, may have behavioral issues and as a nurse she is responsible for their care within the jail. (Ex. 14, Pierce dep. pg. 29, 13-15; 21-25; pg. 52, 5-7, 12-13.) Nurse Pierce also observed from his slow verbal responses that Mr. Crumley had a disability. (Ex. 14, Pierce dep. pg. 64, 16-21; pg. 65, 1.) As a special needs' inmate, Nurse Pierce was required to move Mr. Crumley through the medical screening process faster than an inmate who is not designated as special needs. *Id*. The intake process within the Marion County Jail typically takes between 12 and 24 hours to complete. (Ex. 11, Weaver dep. pg. 12, 2.) Thus, Mr. Crumley was processed on a typical, not expedited,

timeframe for the Marion County Jail booking process. (Ex. 11, Weaver dep. pg. 26; 5-8.) Mr. Crumley's disability was obvious to officers upon observation of his behaviors, including his inability to respond to questions. (Ex. 15, Schrettenbrunner dep. pg. 25, 15-19.) When an individual with an intellectual disability arrives at the facility, the jail should be conducting a brief screening, involving a few questions, to determine whether the inmate may need an accommodation regarding self-help, access resources, manage hygiene and with communication. (Ex. 8, Leone dep. pg. 20, 11- 20.) Within minutes of observing Mr. Crumley, Dr. Leone was able to determine that he had an intellectual disability, memory deficits, poor recall and very limited expressive communication abilities. (Ex. 8, Leone dep. pg. 27, 4-14.) Placing Mr. Crumley in an individualized cell during intake was only part of a reasonable accommodation, and should have been accompanied by staff providing prompting, coaching and assisting. (Ex. 8, Leone dep. pg. 66, 8-12, 16-22.) Accommodations for someone with a similar disability should include prompting for the use of the toilet, coaching an individual in terms of their needs and providing specific assistance – none of which occurred within the Marion County Jail. (Ex. 8, Leone dep. pg. 72, 7-21.)

Nurse Pierce's medical screening was limited to the physical medical needs Mr. Crumley may have been experiencing at the time of her observation. (Ex. 14, Pierce dep. pg. 65, 2-9) Nurse Pierce did not provide custody or medical staff with information regarding Mr. Crumley's specific needs that may be associated with his known mental health diagnosis or intellectual disability, only that he was being made a medical priority due to his disability. (Ex. 11, Weaver dep. pg. 30, 18; pg. 32, 20-24; Ex. 16, Pierce's email.)

Nurse Pierce informed Mr. Crumley that he may access medical, dental or mental health services within the jail by making a written or verbal request. (Ex. 14, Pierce dep. pg. 69, 1-10.)

Due to his disability and limited communication skills, Mr. Crumley was unable to request medical care in this manner. (Ex. 15, Schrettenbrunner dep. pg. 35, 22-25.) Nurse Pierce's understanding of accommodations an individual may require within the jail are limited to an inmate's medical needs or a physical disability; she was not aware of accommodations available for mental health or intellectual disabilities. (Ex. 14, Pierce dep. pg. 28, 15-22; pg. 67, 1-7.)

**V.      Lack of Accommodations While in Intake Holding**

If a Court enters a bond order while an inmate is still in the intake process facility, the inmate is provided with information about the bond amount, pending charges, and a court date. (Ex. 17, Rogers dep. pg. 16, 23-25; pg. 17, 1-9; Ex. 15., Schrettenbrunner dep. pg. 57, 2-11.) The inmate is also allowed to make a phone call to request that someone pay his bond before being transferred to the main jail. *Id.* The criminal court set a $150 bond for Mr. Crumley on October 14, 2017, at 12:56 p.m. (Ex. 13, OMS Crumley Screen.) This information was available to Marion County Jail Staff through the offender management system (OMS). *Id.* Inmates housed in the general holding area have ready access to phones while inmates housed in the intake medical and segregation cells, where Mr. Crumley was placed, do not have open access to phones. (Ex. 17, Rogers dep. pg. 17, 15-21.)

Due to his disability, Mr. Crumley would not have been able to place a phone call without assistance. (Ex. 15, Schrettenbrunner dep. 57; 15; 20-25; pg. 58; 1-3.) Mr. Crumley does not have the ability to use a phone independently and can communicate on the phone with very limited communication skills. (Ex. 1, Crumley dep. pg. 88; 8-13; pg. 152, 1-10.) If given the opportunity to make a phone call, Mr. Crumley would have likely requested to speak with his mother, who is his legal guardian. (Ex. 1, Crumley dep. pg. 152, 8-10.) The Marion County Jail did not have a process in place for staff to assist Mr. Crumley in accessing the telephone and correctional officers

do not readily provide such assistance or accommodation. (Ex. 15; Schrettenbrunner dep. 58; 7-21; Ex. 3; Leone Report, pg. 8, "discussion.")

Defendant Lt. Weaver oversaw the intake late shift in October 2017. (Ex. 11, Weaver dep. pg. 10; 2-19.) There are no additional screening processes for an inmate with a disability other than the medical receiving process. (Ex. 11, Weaver dep. pg. 34; 2-5, 10; Ex. 15, Schrettenbrunner dep. 65; 20-22; pg. 66; 1-4.) "The record shows that the Indianapolis Metropolitan Police Department and the Marion County Sheriff's Office do not have effective means of screening or assessing individuals with mental illness and intellectual disabilities." (Ex. 3, Leone report, pg. 10.) MCSO staff are provided with training which includes information on basic mental health definitions and direction on how to communicate with an inmate with a disability. (Ex. 11, Weaver dep. pg. 15; 6-9.) The accommodations that MCSO staff are aware of typically pertain to an inmate's physical needs, such as the use of a wheelchair. (Ex. 11, Weaver dep. 37; 11-25) The designation that Mr. Crumley is a member of a group home should put MCSO staff on notice that he may need assistance in daily functioning and ability to communicate. (Ex. 11, Weaver dep. pg. 42; 7-9; 14-16)

## VI.     Transfer to Marion County Jail from Intake

Once intake was completed, Mr. Crumley was transported from the processing center to the main jail on a line chain with other inmates. (Ex. 17; Rogers dep. pg. 20; 1-7.) Per policy, Mr. Crumley was pulled out of the line chain and handcuffed separately because he was identified as a special needs inmate with a disability. (Ex. 17, Rogers dep. pg. 22, 21-25, pg. 23; 1-3; pg. 40, 9-10.) One of the transporting officers observed Mr. Crumley to be "boisterous or overly animated" while separately handcuffed to be transported and he kept stepping away from the wall after being told to stand still. (Ex. 17, Rogers dep. pg. 36; 16-17; pg. 27; 2-11; pg. 40; 3-4). Mr. Crumley then

fell into the wall and sustained a laceration to his nose that required him to be taken to the hospital for treatment. (Ex. 17, Rogers dep. 20; 9-17 and Ex. 18; Eskenazi Medical Rec.) Prior to handcuffing Mr. Crumley separately, the transporting officer did not determine if Mr. Crumley was able to understand the instruction of standing still on the wall. (Ex. 17, Rogers dep. pg. 25, 23-25; pg. 26; 1; 8-9.) There were four Marion County custody staff members present in the area in which Mr. Crumley fell and none of these officers were specifically supervising him. (Ex. 17, Rogers dep. pg. 28; 18-20 and pg. 37; 1.) A protection to Mr. Crumley while he was unstable could have been to ensure he was not shackled from behind as he wouldn't be able to catch himself when he fell, which is what occurred during transport. (Ex. 8, Leone dep. pg. 72, 7-13.) Removing him from the line of other offenders was only a small step towards providing an appropriate accommodation. (Ex. 8, Leone dep. pg. 73, 11.)

## VII.   Mental Health Unit

Upon return to Marion County Jail, Mr. Crumley was placed in a mental health unit patrolled by Officer Foxworthy. (Ex. 19, Foxworthy dep. 17, 10-21; pg. 18, 5-6; Ex. 20, Foxworthy's report.) On October 15, 2017, at approximately 10:15 p.m., Officer Foxworthy was alerted by other inmates that Mr. Crumley had defecated himself and was running into walls. (Ex. 19, Foxworthy dep. pg. 26, 23-25; Ex. 20, Foxworthy's Report.) According to Social Worker Schrettenbrunner, Mr. Crumley likely did not know how to use the toilet without assistance as jail toilets differ from those seen in the community. (Ex. 15, Schrettenbrunner dep. pg. 53; 9-16.) At home and in the community, Mr. Crumley is able to properly and independently use the toilet. (Ex. 1, Crumley dep. pg. 150, 3-5; 23-25 and pg. 151, 1). Shower facilities also present differently within the jail and due to Mr. Crumley's level of functioning, he would have difficulty in accessing

a shower. (Ex. 15, Schrettenbrunner dep. pg. 54; 16-18.) Mr. Crumley did not take a shower while he was in custody. (Ex. 21, OMS Record.)

CCS Policy A-08 Communication on Patients' Health Needs requires that a patient with a disability, including a mental illness or developmental disability, be housed in a manner that provides for their safety and security and are provided with the education, equipment, and facilities and the support necessary to perform self-care and personal hygiene in a reasonably private environment." (Ex. 22, CCS Policy A-08, § 3.) Marion County Jail Division Policy JP4-43 directs the Marion County Sheriff to "provide specialized care and adaptive support for inmates with disabilities and prohibit discrimination on the basis of a disability as to the provision of services, programs, and activities." (Ex. 23; MCSO Jail Division Policy JP4-43.) In practice, staff within the Marion County Jail do not provide behavioral assistance to inmates who may have an intellectual disability, like Mr. Crumley, and who are experiencing issues with how to use a toilet or shower within the jail. (Ex. 15, Schrettenbrunner dep. pg. 53; 9-24; pg. 54; 9-11, 23-25; pg. 55, 4-12; Ex. 19, Foxworthy dep. pg. 30, 23-25, pg. 31; 2-4; Ex. 3, Leone report, pg. 8, "discussion.") Staff within the Marion County Jail did not conduct any type of assessment to determine if Mr. Crumley needed assistance or would have been able to access the shower and toilet with assistance. (Ex. 15, Schrettenbrunner dep. pg. 54; 23-25.) Mr. Crumley's placement on the mental health unit did not provide any reasonable accommodations and the officers on this unit failed to recognize Mr. Crumley's distress until alerted by other offenders. (Ex. 3, Leone report, pg. 9; Ex. 8, Leone dep pg. 43, 2-11.) Because of his disability, Mr. Crumley should have been placed in a cell right by an officer so he could be have been monitored and his medical condition could have been checked. (Ex. 8, Leone dep. pg. 43, 14-20.) Intake staff failed to recognize that Mr. Crumley required an accommodation. (Ex. 8, Leone dep. pg. 44, 1-3.)

Mr. Crumley was removed from the mental health unit after he was found running into walls and taken to a segregated medical unit where Social Worker Schrettenbrunner completed a mental health assessment, and a nurse completed a pre-segregation health assessment. (Ex. 19, Foxworthy dep. pg. 28; 13-14; and Ex. 15, Schrettenbrunner pg. 51; line 6-10-22; pg. 52; 11-15.) The pre-segregation health assessment describes Mr. Crumley's general appearance as disheveled, his thought process as disorganized and illogical, and his emotional state as withdrawn and childlike. (Ex. 24, Pre-Seg Report, pg. 1-2.) The assessment notes that Mr. Crumley is from a group home, is not high functioning and that custody requested his move to a single cell for safety. (Ex. 24, Pre-Seg. Report, pg. 2.) As Mr. Crumley was not responding verbally at that time, Mr. Schrettenbrunner was unable to complete the assessment of whether he was suicidal so Mr. Crumley had to remain in the suicide cell, not due to statements or behaviors associated with suicidal ideation, but for safety due to his intellectual disability. (Ex. 15, Schrettenbrunner pg. 52; 11-15, pg. 46; 23-25; pg. 47; 1-20; Ex. 19, Foxworthy dep. pg. 33, 12-13.) The only clothing available to Mr. Crumley in the suicide cell was a suicide smock or blanket. (Ex. 15, Schrettenbrunner dep. pg. 52; 18-24 and pg. 53, 2-5.)

## VIII.   Release from Jail

Mr. Crumley was released from the Marion County Jail to his group home staff on October 16, 2017, at approximately 9:10 p.m. (Ex. 25, ResCare Incident Report pg. 2.) Mr. Crumley was released to staff in a wheelchair, was disoriented and "unable to speak or comprehend anything that was being said to him at the time. [He] was in a deep stare as well as his body was very stiff with his arms …contracted into his chest and he was unable to move his limbs." *Id.* Mr. Crumley was taken directly to the emergency room where he was admitted for observation. (*Id.* and Ex. 1,

Crumley dep. pg. 93; 1-25.) Due to his disability, Mr. Crumley does not have the communication skills to discuss what happened within the jail. (Ex. 1, Crumley pg. 86; 24-25 and pg. 87; 1-2.)

## STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, this Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The relevant inquiry is "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## ARGUMENT

Mr. Crumley was subjected to disability discrimination and is entitled to summary judgment pursuant to the ADA and Rehabilitation Act with respect to his claims against the City of Indianapolis and the Marion County Sheriff. To establish a violation of Title II of the ADA, "the plaintiff must prove that he is a 'qualified individual with a disability,' that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was 'by reason of' his disability." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (citing *Love v. Westville Corr. Ctr.,* 103 F.3d 558, 560 (7th Cir.1996); see also 42 U.S.C. § 12132. Entities that receive federal financial assistance are subject to Section 504 of the Rehabilitation Act. 29 U.S.C. § 794(a). Plaintiff's claims under Section 504 are analyzed and addressed together with his claims under the ADA. Claims under Section 504 are "functionally identical" requiring a plaintiff to allege "(1) he is a qualified person (2) with a disability and (3) the state agency denied him access to a program or activity because of his disability." *Id.* (citation omitted); *see also Vaughn v. Walthall*, 968 F.3d

814, 819 (7th Cir. 2020) (stating that "there is no material difference between [the ADA and the Rehabilitation Act]"). Defendants Sheriff Forestal, in his official capacity as the elected Sheriff of Marion County, and City of Indianapolis, are public entities that receive federal financial assistance and are therefore subject to Title II of the ADA and Section 504. (Ex. 9, City interrog. Resp. pg. 2 and Ex. 12, MCSO interrog. Resp., pg. 2.) (*See Kennington v. Carter*, No. IP02-0648-C-T/K, 2004 WL 2137652, at *3 (S.D. Ind. June 28, 2004) ("the Marion County Lock-up is a "public entity" within the meaning of the ADA."))

To recover compensatory damages on an ADA claim, a plaintiff "must show deliberate indifference, which occurs when defendants *knew* that harm to a federally protected right was substantially likely and . . . *failed* to act on that likelihood." *Hildreth v. Butler*, 960 F.3d 420, 431 (7th Cir. 2020) (emphasis in original) (*quoting Lacy v. Cook Cty*., 897 F.3d 847, 862 (7th Cir. 2018)). The Marion County Sheriff is liable for the actions of its staff as well as staff of its medical contractor, Wellpath. Under Title II, a public entity is liable for its own discriminatory actions and the discriminatory actions of private entities with whom it has a contractual relationship. *See, e.g.*, 28 C.F.R. § 35.130(b)(1) ("[a] public entity, in providing any . . . service, may not directly or through contractual . . . arrangements [discriminate] on the basis of disability"); 28 C.F.R. Pt. 35 App. B (2017) ("All governmental activities of public entities are covered, even if they are carried out by contractors.").

I.   **Mr. Crumley, is a qualified individual with a disability under the ADA and Section 504.**

The ADA defines "disability," as a person with "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Regulations promulgated under the ADA, define "mental impairment" as "[a]ny mental or psychological disorder, such as an intellectual disability (formerly termed 'mental retardation'), organic brain

syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2). Major life activities include, among other things, caring for oneself and communicating. 42 U.S.C. § 12102(2). Courts are instructed to construe this definition of disability "in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A).

The ADA provides that a person is a qualified individual if he (1) has a physical or mental impairment that substantially limits a major life activity; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(1); *Carothers v. Cnty. of Cook*, 808 F.3d 1140, 1147 (7th Cir. 2015). The Seventh Circuit has found that schizoaffective disorder and schizophrenia are considered a qualified disability under the ADA as it may cause disorganized thinking, delusions, obsessions, social withdrawal, and depressive episodes. *Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 656 (7th Cir. 2001), *Palmer v. Circuit Ct. of Cook Cnty.*, 117 F.3d 351, 352 (7th Cir. 1997); *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1284 (7th Cir. 1996), *Earl v. Espejo* 2017 WL 3704826, at *2 (N.D. Ill. Aug. 28, 2017).

Mr. Crumley has a history of mental health diagnoses, including attention deficit hyperactivity disorder (ADHD), bipolar disorder, schizophrenia, and intellectual disability. (Ex. 1, Crumley dep. pg. 17, 12-19; pg. 21, 25; Ex. 2, Eskenazi Records pg. 3.) Due to his intellectual disability, Mr. Crumley has deficits in expressive and receptive language, difficulty expressing his needs and frequently does not understand what others expect of him and he has lived in a group home setting since he was 17. ((Ex. 1, Crumley dep. pg. 26, 19-22; pg. 29, 21-23, and Ex. 3, Leone Report pg. 1.) Based on his diagnoses, functional impairments, and observed behaviors, Mr. Crumley meets the definition of a qualified individual with a disability.

## II.     Defendant City of Indianapolis Violated the ADA and Rehabilitation Act by Failing to Reasonably Accommodate Mr. Crumley's Disability.

Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability. 42 U.S.C. § 12132. As established above, Mr. Crumley is a qualified individual with a disability under both the ADA and Rehabilitation Act. A "public entity" is defined to include "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. 12131(1)(A) and (B). Thus, Title II applies to entities such as the City of Indianapolis for the services offered through the Indianapolis Metropolitan Police Department.

### A. Greater Injury or Indignity Than an Arrestee Without a Disability

Although the Seventh Circuit has not conclusively determined the outward bounds of what constitutes services, programs, or activities under the ADA with respect to police activity, "a police department's response to its citizens' 911 calls can readily be characterized as a service of a public entity." *Hamilton for J.H. v. City of Fort Wayne*, 2017 WL 5467038, at *4 (N.D. Ind. 2017). Recently the Seventh Circuit explicitly recognized the question of whether law enforcement investigations and arrests are "services, programs, or activities of a public entity" and chose to adopt the position of the First Circuit in assuming that Title II applies to arrests, albeit without deciding the issue. *King v. Hendricks Cty. Commissioners*, 954 F.3d 981, 989 (7th Cir. 2020) (citing *Gray v. Cummings*, 917 F.3d 1, 17 (1st Cir. 2019).

The First Circuit has held that the ADA does apply to arrests under two general theories. See *Gray v. Cummings*, 917 F.3d 1 (1st Cir. 2019). First, a violation of the ADA can be established when someone is arrested because the effects of his disability are mis-perceived as a criminal act. *Id.* (citing *Gohier v. Enright*, 186 F.3d 1216, 1220 (10th Cir. 1999). Second, there may be a violation of the ADA when a person with a disability is properly investigated for a crime but the officers failure to reasonable accommodate the arrestee's disability results in him suffering greater

15

injury or indignity in that process than an arrestee without a disability. *Id.* The second theory is applicable to Mr. Crumley.

In *Ravenna v. Vill. of Skokie*, the Court addressed these theories, finding an ADA violation when plaintiff was arrested for disorderly conduct four days after her neighbor called the police and asked to press charges. *Ravenna v. Vill. of Skokie,* 388 F.Supp.3d 999, 1001-1002 (N.D. Ill. 2019). The responding officers understood plaintiff was an individual with mental illness suffering from delusions and had an option to issue a summons arrest but chose to take her into custody. *Id.* The District Court found that "a reasonable jury could find that [defendant's] policy requiring arrests for misdemeanor offenses, as applied to the misdemeanor disorderly conduct complaint against [plaintiff], exhibits deliberate indifference to [her] disability. This case likely would have been avoided if Skokie had issued a summons rather than subjecting her to the alleged violence and indignity of arrest." *Id.* at 1009.

The same can be said here. Officer Jones was called out to the scene because a business owner called the police about a disturbance, he only became aware that Mr. Crumley bit his van mate after he arrived. (Ex. 4, Jones dep. pg. 17, 23-25; pg. 18, 8-11 and Ex. 5, OAR.) Officer Jones knew that Mr. Crumley was suffering from a mental illness and observed him sitting on the ground, looking around, and appearing distant. (Ex. 4, Jones dep. pg. 25, 20-21; pg. 27, 4-5; 8-21.) Officer Jones was at the scene with Mr. Crumley for approximately an hour and at no time was he aggressive or threatening. (Ex. 4, Jones dep. pg. 30; 5-6; pg. 31, 8-13.) Any agitation that Mr. Crumley may have previously experienced was clearly no longer at issue. Officer Jones utilized his discretion to place Mr. Crumley under an Immediate Detention, specifically in part because he was concerned about Mr. Crumley's well-being and was concerned that he couldn't confirm Mr. Crumley's last medication administration. (Ex. 4, Jones dep. pg. 62, 2-8; pg. 42, 8-18.) However,

16

Officer Jones' perceived this to be the full extent of any responsibility he may have had with respect to Mr. Crumley's safety and wellbeing.

It is undisputed that Officer Jones received a phone call from a social worker shortly after he took Mr. Crumley to Eskenazi and alerted Officer Jones to concerns regarding Mr. Crumley remaining in custody because of his disability, specifically related to medication management, one of the concerns that apparently prompted Officer Jones to take Mr. Crumley to Eskenazi. (Ex. 4, Jones dep. pg. 51, 6-24; pg. 54, 20-22.) Officer Jones did nothing in response to this call. Indiana Code § 35-33-4-1 provides Officer Jones with statutory discretion to issue a summons as an alternative to a custodial arrest on a misdemeanor but he failed to do take any steps to determine if that was possible for Mr. Crumley. According to Officer Jones, one of the reasons a summons arrest would have been inappropriate was because Mr. Crumley could not verbally promise to appear in court. (Ex. 4, Jones dep. pg. 58, 4-9; pg. 60, 17-18.) However, Mr. Crumley's inability to communicate his needs under these circumstances was a direct result of his disability. (Ex. 8, Leone dep. pg. 45, 19-25.) Further, there may have been an avenue for Officer Jones to issue a summons arrest in conjunction with the immediate detention. (Ex. 6 Dardeen Dep. pg. 34, 7-14.) Social services are in a better position to respond to Mr. Crumley's needs than a police department or sheriff's office. (Ex. 8, Leone dep. pg. 97, 5-10). A premise which Officer Jones appeared to agree as he ordered Mr. Crumley to Eskenazi for an evaluation. However, even after the hospital contacted him and put him on notice that there were further concerns about Mr. Crumley's medical needs, he failed to take any further steps to even inquire as to whether he could be released from custody.

Dr. Leone testified that he believed the denial of this reasonable modification request made on Mr. Crumley's behalf to be improper when the option to utilize a summons arrest or other

diversion from jail was available. (Ex. 8, Leone dep. pg. 118, 7-14). There does not appear to have been anything that would have prevented Officer Jones from contacting Eskenazi regarding Mr. Crumley without placing him under arrest or making further efforts to obtain information about his already established mental health supports. (Ex. 8, Leone; dep. pg. 136, 16-25; p. 137, 1-11). Such an effort is also expressly encouraged by General Order 4.7.[2] There were options available to Officer Jones to accommodate Mr. Crumley's disability, and efforts to utilize these were encouraged by General Order 4.7. Specifically, Officer Jones could have made affirmative efforts to gather information about Mr. Crumley's mental health treatment team and support system, and facilitated him receiving necessary medical care without placing him under arrest. The refusal by Officer Jones led to Mr. Crumley being incarcerated within the Marion County Jail, and invariably resulted in Mr. Crumley suffering greater injury and indignity than had a reasonable modification been granted, such as an alternative to a custodial arrest. Officer Jones acted with deliberate indifference in choosing not to accommodate Mr. Crumley's disability. This failure to take affirmative steps to materially consider options other than custodial arrest under the circumstances amounted to a rights violation under the ADA and Rehabilitation Act.

**Exigent Circumstances Not Present**

Further, as the Seventh Circuit did in *King*, the Court may also assess whether the plaintiff's actions constituted exigent circumstances that would have caused officers to react similarly regardless of whether or not he had a disability. *King* at 989. (No ADA violation was established when plaintiff was shot on scene after coming towards the responding officers with a knife. The Court found, "we have been given no reason to believe that [the officer's] response would have been different had someone not suffering from a mental illness done the same.").

---

[2] "Employees should attempt to contact family or mental health facilities on behalf of an individual in need, when possible." General Order 4.7; Section III.B.

Prior to the Seventh Circuit's decision in *King*, this District Court utilized a similar analysis that focuses on the "but for" element; particularly in light of whether exigent circumstances existed that posed a threat to officers or the public. See *Lynn v. City of Indianapolis*, 2014 WL 3535554 at *13-14 (S.D. Ind. 2014) (holding that an ADA claim failed when an individual experiencing a seizure was tased several times due to the appearance of being under the influence of narcotics and then resisting arrest); *Hamilton* 2017 WL 5467038 at *5 (holding that a request for reasonable modification made by the mother of a teenage boy with autism that would require police to send only officers that had received Crisis Intervention Team training to respond to incidents involving mental health crises was unreasonable given that the arrestee was in a fight upon the officers' arrival and then assaulted an officer. The Court also held this would amount to a fundamental alteration of the department's services).

However, as with Mr. Crumley, when exigent circumstances are not present, Courts have found police departments may be liable for a failure to accommodate an arrestee's disability. *Ravenna v. Vill. of Skokie,* 388 F.Supp.3d 999, 1004 (N.D. Ill. 2019). see also *Estate of Robey by Robey v. City of Chicago*, 2018 WL 688316, at *5 (N.D. Ill. 2018) ("[W]here exigent circumstances were not present, courts have found that government entities can be held liable for failure to accommodate under the ADA in relation to on-the-street arrest situations.").

The undisputed facts demonstrate that exigent circumstances of immediate safety concerns were not present at the time of Mr. Crumley's arrest. By the time officers arrived, there was no ongoing disturbance, and Officer Jones was not aware Mr. Crumley had earlier bitten anyone until Mr. Crim informed him of the incident. (Ex. 4, Jones dep. pg. 17, 23-25; pg. 18, 8-11; Ex. 5, OAR.) Officer Jones spent approximately an hour with Mr. Crumley at the scene and at no point did Mr. Crumley act aggressive or threatening. (Ex. 4, Jones dep. pg. 30; 5-6; pg. 31, 8-13.) Rather, he sat

"kind of just looking around" while unresponsive to questions, would emit a humming sound and scoot away when people approached too closely, and Jones was able to put Crumley in handcuffs without any resistance of issues. (Ex. 4, Jones dep. pg. 25, 20-21; pg. 27, 8-14, 17-21; pg. 66, 21-23.)  Because Mr. Crumley is a qualified individual with a disability and exigent circumstances were not present at the time of his arrest, officers had a duty to reasonably accommodate Mr. Crumley's disability.

### III.    Mr. Crumley was denied the benefits of services, programs or activities during his incarceration within the Marion County Jail.

Title II of the ADA, 42 U.S.C. §§12131-12165 et seq., applies to "public entities," including correctional facilities such as prisons and jails, *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998), and requires that jails accommodate inmates with disabilities. One way to show discrimination under the ADA is a failure to provide reasonable accommodations to allow the individual with a disability to access services and programs equally. *Wisc. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006). Title II requires "program access," which means that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In other words, "[a] public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible and usable by individuals with disabilities." 28 C.F.R. § 35.150(a). "[D]iscrimination includes ... a failure to make reasonable modifications in policies, practices, or procedures." *Hildreth v. Butler*, 960 F.3d 420, 431 (7th Cir. 2020) (citing *A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 594 (7th Cir. 2018).

In the correctional context, "inmates [are provided] with many recreational activities, medical services, and educational and vocational programs, all of which at least theoretically

benefit the prisoners and any of which disabled prisoners could be excluded from participation in."
*Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (internal citations and
parentheticals omitted). "Access to showers … and toilet facilities are considered a 'program or
activity' within the meaning of the ADA." *Clemons v. Dart*, 168 F. Supp. 3d 1060, 1066 (N.D. Ill.
2016) (citing *Jaros*, 684 F.3d at 672.). "Adequate … facilities to wash and use the toilet are among
the 'minimal civilized measure of life's necessities,' that must be afforded prisoners." *Jaros v.
Illinois Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012) (quoting *Rhodes v. Chapman,* 452 U.S.
337, 347 (1981)). *See also Bramlett v. Dart*, No. 14–C–5939, 2015 WL 4148711, at *3 (N.D. Ill.
July 9, 2015) (the ADA considers basic necessities such as access to showers as covered programs
and services.) An entity's refusal to accommodate a plaintiff's disability can keep him from
accessing services, such as showers, on the same basis as inmates without a disability. *Jaros v.
Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). A public entity is also required to
"furnish appropriate auxiliary aids and services where necessary to afford an individual with a
disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or
activity conducted by a public entity." 28 C.F.R. § 35.160(b)(1); *Kennington*, at *4 (S.D. Ind. June
28, 2004).

   Mr. Crumley needs only to establish that, because of his disability, the Marion County
Sheriff deprived him of accessing jail services on the same basis as other inmates. *Jaros v. Illinois
Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012); see also 28 C.F.R. § 35.130(b)(1)(ii) (a public
entity may not "[a]fford a qualified individual with a disability an opportunity to participate in or
benefit from the aid, benefit, or service that is not equal to that afforded others"). "Refusing to
make reasonable accommodations is tantamount to denying access … ." *Jaros*, 684 F.3d at 672.
*See also Cook v. Illinois Dep't of Corr.*, 2018 WL 294515, at *2-3 (S.D. Ill. Jan. 4, 2018) (the

Court found a material issue of fact as to whether plaintiff was denied a benefit of a prison program based on his disability when there was a substantial delay in his transfer to an accessible facility.) The federal regulations applicable to jails and correctional facilities requires that "[p]ublic entities shall ensure that qualified inmates or detainees with disabilities shall not, because a facility is inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of, the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." 28 C.F.R. § 35.152(b)(1).

In order to establish a claim under the ADA, plaintiff must show that but for his disability, he would have been able to access the services or benefits at issue. *Wisconsin Comm'y Servs., Inc. v. City of Milwaukee*, 465 F.3d 737 (7th Cir. 2006). The key question is whether the plaintiff, given his disability, is able to access the program or service at issue with or without accommodations and whether the accommodations, if provided, were reasonable. *Hildreth v. Butler*, 960 F.3d 420, 431 (7th Cir. 2020). The ADA's reasonableness requirement is to be considered in light of security and safety concerns and administrative exigencies in a correctional setting. *Id.* (citing Love, 103 F.3d at 561.) In *Hildreth*, due to the plaintiff's disability, he was unable to handwrite his legal documents. *Id.* Defendants in turn modified the policies to allow plaintiff additional time in accessing the law library and assigning him a helper to assist with drafting, which the Court found to be reasonable. *Id.* With respect to Mr. Crumley in this case, the Court need not even engage in the analysis of whether an accommodation was reasonable as Mr. Crumley was provided with none to be reviewed.

### A. Denial of Equal Access to Phone Services.

Mr. Crumley's communication deficits and behaviors associated with his disability were obvious to officers and staff upon observation. (Ex. 14, Pierce dep. pg. 64, 16-21; pg. 65, 1; Ex.

15, Schrettenbrunner dep. pg. 25, 15-19.) Once a bond order is issued for an inmate in intake, he is provided such information and has ready access to use the jail's phone services in order to contact someone in the community regarding that bond before being transferred to the main jail. (Ex. 17, Rogers dep. pg. 16, 23-25; pg. 17, 1-9; Ex. 15., Schrettenbrunner dep. pg. 57, 2-11.). Inmates held in intake segregation cells, like Mr. Crumley, are not provided with such ready access to phones. (Ex. 17, Rogers dep. pg. 17, 15-21.) Mr. Crumley's bond of $150 was entered on October 14, 2017, just a few hours after he arrived at the jail. (Ex. 13; OMS Crumley Screen.) Due to Mr. Crumley's disability and limited communication skills, he would have required assistance from staff or another inmate to request to use the phone and navigate the prompts on the jail's phone system in order to access the jail's phone services. (Ex. 15, Schrettenbrunner dep. 57; 15; 20-25; pg. 58; 1-3; Ex. 1, Crumley dep. pg. 88; 8-13; pg. 152, 1-10).

Mr. Crumley would have required assistance in providing the information about his bond to someone via the phone. (Ex. 15, Schrettenbrunner dep. 57; 15; 20-25; pg. 58; 1-3.) If given the opportunity to make a phone call, Mr. Crumley would have likely requested to speak with his mother, who is his legal guardian. (Ex. 1, Crumley dep. pg. 152, 8-10.) However, the Marion County Jail does not have a process in place for inmates like Mr. Crumley to receive assistance or accommodations in accessing phone services nor did anyone contact Mr. Crumley's group home or his legal guardian, Shirley Crumley, to notify her that the bond order had been issued. (Ex. 15; Schrettenbrunner dep. 58; 7-21; Ex. 3; Leone Report, pg. 8, "discussion.") As a result, Mr. Crumley was denied equal access to phone services that are available to inmates without a disability.

### B.  Denial of Equal Access to Toileting and Shower Services.

On October 15, 2017, while Mr. Crumley was housed on the special needs unit, a responding officer was notified that he had defecated on himself. . (Ex. 19, Foxworthy dep. pg. 26, 23-25; Ex. 20, Foxworthy's Report.) At home and in the community, Mr. Crumley is able to properly and independently use the toilet. (Ex. 1, Crumley dep. pg. 150, 3-5; 23-25 and pg. 151, 1). The Marion County Jail social worker opined that Mr. Crumley likely did not know how to use the toilet as they look and operate differently than a toilet Mr. Crumley would be familiar with in the community. (Ex. 15, Schrettenbrunner dep. pg. 53; 9-16.) Further, even after defecating on himself, Mr. Crumley did not take a shower while he was in the custody of the Marion County Jail. (Ex.20, OMS record.) While the form in Mr. Crumley's inmate packet stated that he refused to take a shower, it is unclear whether Mr. Crumley understood. Additionally, Social Worker Schrettenbrunner opined that due to Mr. Crumley's level of functioning, he would have needed assistance in accessing a shower as the shower facilities also present differently within the jail. (Ex. 15, Schrettenbrunner dep. pg. 54; 16-18.)

Both the medical policy, CCS Policy A-08 Communication on Patients' Health Needs, and custodial policy, Marion County Jail Division Policy JP4-43, in place within the Marion County Jail contemplate that inmates with disabilities may need assistance within the jail. Marion County Jail Division Policy JP4-43 stipulates that the sheriff's office has a contractual relationship with medical providers that are trained and educated to assist inmates with disabilities. (Ex. 23, MCSO Jail Policy 44-43 § VI(B)). The medical contractor's policy, CCS Policy A-08 Communication on Patients' Health Needs, contemplates that inmates with mental illness or a developmental disability are "to be provided with education, equipment and facilities and the *support necessary* to perform self-care and personal hygiene in a reasonably private environment." (Ex. 22, CCS Policy A-08, § 3) (emphasis added.)

However, in practice, staff within the Marion County Jail do not and did not conduct any type of assessment to determine if Mr. Crumley needed assistance or would have been able to access self-care and hygiene services, such as showering and toileting, with assistance as contemplated by CCS Policy A-08. (Ex. 15, Schrettenbrunner dep. 54, 23-25). Further, neither medical nor custodial staff within the Marion County Jail provide assistance to inmates who may have an intellectual disability, like Mr. Crumley, and who are experiencing issues with how to use a toilet or shower within the jail. (Ex. 15, Schrettenbrunner dep. pg. 53; 9-24; pg. 54; 9-11, 23-25; pg. 55, 4-12; Ex. 19, Foxworthy dep. pg. 30, 23-25, pg. 31; 2-4; Ex. 3, Leone report, pg. 8, "discussion.")

## C. The Marion County Sheriff Failed to Screen Mr. Crumley Regarding a Need for Reasonable Accommodations.

Title II of the ADA requires that public entities, such as the Marion County Sheriff, proactively assess what accommodations an inmate may need if his disability is obvious. Due to Mr. Crumley's verbal limitations during his detainment and his intellectual disability, he does not have the ability to request the specific assistance and accommodations that would have allowed him to properly use the phones, toilets, shower, or request medical attention. However, his failure to request an accommodation is not dispositive of his claim. Under Title II of the ADA, plaintiff is not required to proactively request a reasonable accommodation in order to have equal access to a public entities programs and services. 28 C.F.R. § 35.130(b)(7). *See Phipps v. Sheriff of Cook Cnty.*, 681 F. Supp. 2d 899, 926 (N.D. Ill. 2009) ("The defendants are wrong in assuming that it was necessary for the plaintiffs to have requested the specific accommodations in question. Strictly speaking, the ADA embodies no such requirement.") "Title II of the ADA requires affirmative, proactive accommodations necessary to ensure meaningful access to public services and programs, not accommodation upon request." *See Clemons v. Dart*, 168 F. Supp. 3d 1060, 1068

(N.D. Ill. 2016). "[Defendant] was required to provide non-discriminatory access; [plaintiff] was not required to request it. *Id*.

A District Court opinion out of the District of Columbia succinctly defined this obligation in the correctional setting and found that plaintiff was entitled to summary judgment, despite the parties disagreement over the nature of his ability to communicate and need for certain accommodations, because the facility failed to conduct any type of assessment as to what accommodations plaintiff *may* need. *Pierce v. D.C.*, 128 F. Supp. 3d 250 (D.D.C. 2015) (emphasis added).

> "[W]hen [plaintiff] first arrived at the prison facility, the District's employees and contractors did nothing to evaluate [his] need for accommodation, despite their knowledge that he was disabled. … They did not hire an expert to assess [his] ability to communicate … they did not even consult the Department of Corrections' own policies to figure out what types of accommodations are ordinarily provided to inmates with hearing disabilities. Instead, they figuratively shrugged and effectively sat on their hands with respect to this plainly hearing-disabled person in their custody, presumably content to rely on their own uninformed beliefs about how best to handle him and ***certainly failing to engage in any meaningful assessment of his needs***. This Court finds that, in so doing, the District denied [plaintiff] meaningful access to prison services and intentionally discriminated against him on the basis of his disability in violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

*Pierce v. D.C.*, 128 F. Supp. 3d 250, 254 (D.D.C. 2015) (emphasis added).

While the nature of Mr. Crumley's disability and communication barriers are different from that of the plaintiff in *Pierce*, his disability is obvious and the lack of meaningful evaluation as to the nature of his needs is analogous. Marion County Jail custody and medical staff failed to provide any type of screening or assessment with respect to Mr. Crumley's needs associated with his intellectual disability and inability to understand how to access the toilet, shower, and medical and phone services. (Ex. 3, Leone report, pg. 10.) Staff should have determined that Mr. Crumley experiences memory deficits, poor recall and very limited expressive communication abilities

because of his intellectual disability. (Ex. 8, Leone dep. pg. 27; 4-14.) Placing Mr. Crumley in an individualized cell during intake was only part of a reasonable accommodation that he required. (Ex. 8, Leone dep. pg. 66, 8-12 and 16-22.) Staff should have also provided accommodations in the form of coaching, assisting and prompting for services such as use of the toilet or coaching to ensure his needs were met. (Ex. 8, Leone dep. pg. 72, 7-21.) There is no question of the fact that the Sheriff's Department does not have a screening process available to staff and that staff took no steps to evaluate Mr. Crumley's needs or abilities, which ultimately deprived him of access to medical, telephone, toileting and shower services. Defendants have failed to identify an ADA expert of their own to rebut or otherwise challenge the reasonableness and feasibility of Dr. Leone's recommendations.

### D. Plaintiff was otherwise subjected to discrimination in violation of the ADA and Rehabilitation Act.

Mr. Crumley may show that he was also otherwise subjected to discrimination because of his disability in order to establish a violation of Title II of the ADA. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015), 42 U.S.C. § 12132. Proof of disproportionate impact for an individual with a disability may entitle plaintiff to relief. *Wis. Cmty. Servs., Inc. v. City of Milwaukee,* 465 F.3d 737, 753 (7th Cir.2006). *See Garfield v. Cook Cty.* 2009 WL 4015553, at *3 (N.D. Ill. Nov. 19, 2009) ([t]he court can reasonably infer that the confiscation of Garfield's cane [the discriminatory act] was pursuant to the complained-of policy, thereby satisfying the discrimination requirement.") "The ADA guards against injuries [a person with a disability] suffer[s] because they are disabled." *Beaver v. Melotte*, No. 08-C-187, 2008 WL 4610317 at *1 (E.D. Wisc. Oct. 15, 2008).

### 1. Mr. Crumley sustained injuries when being transported because of his disability.

Mr. Crumley was subjected to such disproportionate impact, because of his disability, during transport from the processing center to the main jail. Once his intake was completed, Mr. Crumley was transported from the processing center to the main jail on a line chain with a number of other inmates. (Ex. 17; Rogers dep. pg. 20; 1-7.) Pursuant to practice within the Marion County Jail, because Mr. Crumley was identified as an inmate with a disability, the officers removed Mr. Crumley from the line chain and handcuffed him separately behind his back. (Ex. 17, Rogers dep. pg. 22, 21-25, pg. 23; 1-3; pg. 40, 9-10.)

Mr. Crumley was described by a transporting officer as "boisterous or overly animated" and was unable to follow the instruction of standing still by the wall while the inmates were waiting to be transported. (Ex. 17, Rogers dep. pg. 36; 16-17; pg. 27; 2-11; pg. 40; 3-4). None of the transporting officers took any steps to determine if Mr. Crumley was able to understand and follow these simple instructions or if he needed assistance or an accommodation to safely follow the transport process. (Ex. 17, Rogers dep. pg. 25, 23-25; pg. 26; 1; 8-9.)

Mr. Crumley fell into the wall and was unable to catch himself because he was handcuffed behind his back. (Rogers dep. 20; 15). He sustained a laceration to his nose that required him to be taken to the hospital for treatment. (Ex. 17, Rogers dep. 20; 9-17 and Ex. 18, Eskenazi Medical Record.) While it may not be discriminatory to afford Mr. Crumley differential treatment because of his disability, the manner in which the officers attempted to transport Mr. Crumley did not account for or accommodate his inability to understand even the most basic instructions. Removing Mr. Crumley from the line of other offenders was only a small step towards providing an appropriate accommodation to him during transport; he should have been afforded additional protections to ensure his safety. (Ex. 8, Leone dep. pg. 72, 7-13 and g. 73, 11.) Furthermore, the procedure of handcuffing him separately behind his back prevented him from catching himself

when he fell. As such, the differential treatment he received was not appropriate and Mr. Crumley should have been provided a modification to the policy in that an officer personally maintained his safety.

**2. Disproportionate use of solitary confinement because of Mr. Crumley's disability.**

A review of the undisputed facts, in a light most favorable to the Sheriff's Office, shows that its staff and medical contractors were not equipped to keep Mr. Crumley safe and stable through his short detainment. This is made most obvious by the fact that Mr. Crumley was placed in an isolated, suicide cell from because of his intellectual disability. Federal regulations specifically state that jails, "[s]hall not place inmates or detainees with disabilities in inappropriate security classifications because no accessible cells or beds are available, [and,] [s]hall not place inmates or detainees with disabilities in designated medical areas unless they are actually receiving medical care or treatment." 28 C.F.R. § 35.152(b)(2)(i)-(ii).

On October 15, 2017, at approximately 10:15 p.m., while already placed on a mental health unit, staff was alerted by other inmates that Mr. Crumley was defecating himself and was running into walls. (Ex. 19, Foxworthy dep. pg. 26, 23-25; Ex. 20, Foxworthy's Report.)  Mr. Crumley's placement on the mental health unit did not provide any reasonable accommodations evidenced by the fact that the officers on this unit failed to recognize Mr. Crumley's distress until alerted by other offenders. (Ex. 8, Leone dep. pg. 43, 2-11.) After this, he was removed from the mental health unit and taken to a medical unit designated as the SCU where Social Worker Schrettenbrunner completed a mental health assessment and a nurse completed a pre-segregation health assessment. (Ex. 19, Foxworthy dep. pg. 28; 13-14; and Ex. 15, Schrettenbrunner pg. 51; line 6-10-22; pg. 52; 11-15.)

Because of Mr. Crumley's communication deficits, Mr. Schrettenbrunner was unable to complete a suicide assessment and Mr. Crumley was forced to remain in the isolated suicide cell. (Ex. 15, Schrettenbrunner pg. 52; 11-15, pg. 46; 23-25.) Mr. Schrettenbrunner did not attempt to reasonably accommodate Mr. Crumley's communication deficits or seek transfer to a more appropriate setting for Mr. Crumley's needs. Mr. Crumley did not make statements or display behaviors indicative of suicidal ideation or tendencies. (Ex. 15, Schrettenbrunner pg. 52; 11-15, pg. 46; 23-25; pg. 47; 1-20; Ex. 19, Foxworthy dep. pg. 33, 12-13.) Instead, he was housed in this suicide precaution cell due to his intellectual disability. *Id.* Mr. Crumley was stripped of regular clothing and forced to wear a suicide smock or a suicide blanket. (Ex. 15, Schrettenbrunner dep. pg. 52; 18-24 and pg. 53, 2-5.) Because of his disability, Mr. Crumley should have instead been placed in close proximity to an officer so he and his medical conditions could be have been closely monitored and checked. (Ex. 8, Leone dep. pg. 43, 14-20.) Staff failed to recognize that Mr. Crumley required such accommodation. (Ex. 8, Leone dep. pg. 44, 1-3.)

Mr. Crumley was released to his group home staff on October 16, at 9:10pm. (Ex. 25, ResCare Incident Report pg. 2.) Mr. Crumley was released in a wheelchair and unable to speak or comprehend anything being said to him and, as such, was immediately taken and admitted to the Eskenazi Emergency room where he remained until October 24. (*Id.* and Ex. 1, Crumley dep. pg. 93; 1-25.)

Once Mr. Crumley was confined to the suicide cell, he was not provided with adequate access to medical care, as evidenced by the condition of which he was released from the jail. To request medical care within the jail, without an accommodation to that process, Mr. Crumley would have had to submit a written or verbal request. (Ex. 14, Pierce dep. pg. 69, 1-10.)  Due to his disability and limited communication skills, Mr. Crumley was unable to request medical care

in this manner. (Ex. 15, Schrettenbrunner dep. pg. 35, 22-25.) Further, as Mr. Crumley was unable to understand the most basic questions asked by staff, he would not have been able to understand the written inmate handbook provided to him by custody staff explaining how an inmate may request medical care. *Id.* In the isolated, suicide cell, Mr. Crumley was cut off from other inmates who may have been able to advocate for him again as they did on the mental health unit and staff clearly did not observe his need for medical care as he was released in such poor condition that required immediate hospitalization.

### E. Staff and contractors of the Marion County Sheriff acted with deliberate indifference.

Defendant Marion County Sheriff's decision to incarcerate a disabled individual with an intellectual disability and lower level of functioning, such as Mr. Crumley, without providing accessible services and supports, constitutes deliberate indifference entitling plaintiff to damages under the ADA.

The Seventh Circuit has adopted "the two-part standard applied by most other courts, "requiring both (1) 'knowledge that a harm to a federally protected right is substantially likely,' and (2) 'a failure to act upon that likelihood.'" *Lacy v. Cook Cty., Illinois*, 897 F.3d 847, 863 (7th Cir. 2018) (quoting *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013) (quoting *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)). "This standard is sensible based on the clear purpose and evolution of the ADA. Title II was modeled after section 504, which was meant to combat discrimination that is "most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect." *Lacy* at 863 (quoting *Alexander v. Choate*, 469 U.S. 287, 295 (1985))."

"The first [prong of the deliberate indifferent standard] is satisfied when the public entity has notice that an accommodation is required." *Kennington v. Carter*, No. IP02-0648-C-T/K, 2004

WL 2137652, at *7 (S.D. Ind. June 28, 2004) (citing *Lovell v. Chandler,* 303 F.3d 1039, 1056 (9th Cir.2002), *cert. denied,* 537 U.S. 1105 (2003)). "As to the first prong of the deliberate indifference analysis—knowledge that harm was likely—it could hardly have been more apparent that [plaintiff], who spends his every waking moment confined to a wheelchair, was in need of ADA compliant facilities." *Clemons v. Dart*, 168 F. Supp. 3d 1060, 1070 (N.D. Ill. 2016).

It is undisputed that both custody and medical staff within the Marion County Jail were on notice of Mr. Crumley's disability and level of functioning. He was likely placed in an isolated intake cell, monitored by cameras, upon intake to the processing center and his disability was obvious upon observation of his behaviors, including his inability to respond to questions. (Ex. 11, Weaver dep. pg. 21, 21-15; pg. 22, 1; pg. 26, 17-18 and Ex. 15, Schrettenbrunner dep. pg. 25, 15-19.) Once Nurse Pierce had completed his medical screening, she sent emails to jail custody staff and supervisors, as well as entered a note into the jail offender management system, that he was a medical priority as he is a group home member. (Ex. 11, Weaver dep. pg. 30, 18; pg. 32, 20-24; Ex. 16, Pierce's email.) This designation put staff on notice that Mr. Crumley may need assistance as a person with a disability. (Ex. 11, Weaver dep. pg. 42; 7-9; 14-16) Nurse Pierce was also aware that members of group homes, such as Mr. Crumley, may have behavioral issues within the jail and as a nurse she is responsible for their care within the jail. (Ex. 14, Pierce dep. pg. 29, 13-15; 21-25; pg. 52, 5-7, 12-13.)

Mr. Crumley can also establish the second prong of the deliberate indifference analysis - that the sheriff's staff failed to act upon the likelihood that he would suffer a violation to his federal rights. *Lacy v. Cook Cty., Illinois*, 897 F.3d 847, 863 (7th Cir. 2018). The need for accessible services and programs for disabled detainees within the Marion County Jail was well settled when Mr. Crumley was incarcerated in 2017, as the Supreme Court held conclusively that the ADA

applies to jails and prisons almost 20 years prior. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998).

In this case, the Marion County Sheriff was aware of his duty to accommodate inmates with disabilities as there were policies in place relating to treatment of inmates with disabilities. (Ex. 23 MCSO Jail Division Policy JP4-43 § VI(B).) Medical CCS Policy A-08 Communication on Patients' Health Needs requires that, "[p]atients with disabilities, including temporary disabilities, are housed in a manner that provides for their safety and security." (Ex. 22; CCS Policy A-08.). It further directs that patients with disabilities are provided with the education, equipment and facilities and the support necessary to perform self-care and personal hygiene in a reasonably private environment. (Ex. 22, CCS Policy A-08, § 3). This includes inmates that have a mental illness or developmental disability. *Id.* However, the only accommodations contemplated or available to inmates are related to physical disabilities, not an intellectual disability or mental illness. The Marion County Jail did not have a process in place for staff to assist inmates, such as Mr. Crumley, who are unable to access services due to an intellectual disability, and correctional officers do not provide such assistance or accommodation. (Schrettenbrunner dep.pg. 53; 19, 24; pg. 54; 9-11, 23-25; pg. 55, 4-12; Foxworthy dep. 31; 2-4). 58; 7-21). Further, staff within the Marion County Jail do not conduct any type of screenings or assessment to determine if assistance due to an intellectual disability or mental illness is necessary. (Ex. 11, Weaver dep. pg. 34; 2-5, 10; Ex. 14, Schrettenbrunner dep. 65; 20-22; pg. 66; 1-4.)

Defendants cannot contend that they were unaware that Mr. Crumley required staff assistance to access the most basic services within the jail when the policies above contemplated that such accommodations may be necessary, and when custody and medical staff were well aware

33

of Mr. Crumley's disabilities and limitations while in custody. That these failures resulted in significant injury to Mr. Crumley further highlights the deliberate indifference he experienced.

## **CONCLUSION**

For the reasons described herein, Plaintiff respectfully urges the Court to enter judgment in his favor with respect to claims asserted against the City of Indianapolis and the Elected Marion County Sheriff, in his official capacity, for violations of plaintiff's rights under Title II of the Americans with Disabilities Act of 1990 and Section 504 of the Rehabilitation Act.

Respectfully submitted,

*/s/ Nikki G. Gray*
Nikki G. Gray (No. 31209-49)
Thomas E. Crishon (No. 28513-49)
Emily A. Munson (No. 29025-49)
Justin C. Schrock (No. 32140-49)
INDIANA DISABILITY RIGHTS
4701 North Keystone Avenue, Suite 222
Indianapolis, IN 46205
Tele:   (317) 722-3445
Fax:    (317) 722-5564
ngray@indianadisabilityrights.org