UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KEITH CRUMLEY, by Next Friend
Shirley Crumley,

                *Plaintiff*

    v.

KERRY J. FORESTAL, et al.,

              *Defendants*

)
)
)
)
)
)
)
)
)
)

Cause No. 1:19-cv-4110-RLM-DML

<u>OPINION AND ORDER</u>

Plaintiff Keith Crumley, through his Next Friend Shirley Crumley, has filed this lawsuit over events that happened when he was arrested and incarcerated in October 2017. He has sued defendants the City of Indianapolis, the Marion County Sheriff's Office, and Kerry Forestal in his official capacity as Marion County Sheriff for claims brought under Title II of the Americans with Disabilities Act of 1990 and Section 504 of the Rehabilitation Act. He also sued individually defendants Teresa Pierce, Khyree Jones, Tyler Bouma, Joanna Sahm, Robert Frederick, Diedra Baker, Tanesha Crear, William Weaver, and Officer Foxworthy for claims brought under 42 U.S.C. § 1983.

Cross-motions for summary judgment are before the court: Mr. Crumley has moved for summary judgment on his ADA and Section 504 claims he brought against Indianapolis and Mr. Forestal. Defendants Bouma, Sahm, Frederick, Baker, Creater, Weaver, and Foxworthy ("the individual municipal defendants") and the Sheriff's Office have moved for summary judgment on all

claims brought against them. Defendants Bouma,[1] Jones, and Indianapolis ("the city defendants") have separately moved for summary judgment on all claims brought against them. For the following reasons, the court denies Mr. Crumley's motion [Doc. No. 95], grants in part and denies in part the individual municipal defendants' and the Sheriff's Office's motion [Doc. No. 107], and grants the city defendants' motion [Doc. No. 109].

I.     BACKGROUND[2]

Mr. Crumley is a disabled person with deficits in expressing his needs and understanding what others expect of him. He has been diagnosed with ADHD, bipolar disorder, schizophrenia, and intellectual disability. He has lived in a group home since he was seventeen and is reportedly extremely low functioning. He takes several medications to control symptoms related to his disabilities, including clozapine for his schizophrenia, and has become listless and catatonic when he misses multiple doses.

---

[1] Both, the municipal defendants and the city defendants, brief why Mr. Bouma is entitled to summary judgment. It isn't entirely clear why Mr. Bouma is claimed by both groups, but it's of no consequence because regardless, it's clear that Mr. Bouma is entitled to summary judgment on Mr. Crumley's § 1983 claims against him.
[2] A surprising number of "facts" asserted in the parties' brief find no support in the summary judgment record. The court has done its best to sidestep those "facts" in developing this statement of facts with evidentiary support.

### A.  Officer Khyree Jones's Arrest of Mr. Crumley

Indianapolis Metropolitan Police Department Officer Khyree Jones and another officer responded to a disturbance at a local business on October 13, 2017. Officer Jones spoke with the reporting individual, a local proprietor, who said Mr. Crumley had been throwing rocks at his business and nearby cars. Mr. Crumley was on an outing with people from his group home, including group home supervisor Nathan Crim. Officer Jones approached Mr. Crumley's group, and Mr. Crim told Officer Jones that Mr. Crumley had earlier bitten his roommate, and the roommate wished to press charges. He also stated that he pulled over the van that the group had been traveling in because Mr. Crumley was upset, and that he was unable to control Mr. Crumley when he was throwing rocks after the van was pulled over. Officer Jones saw bite marks on the roommate's neck and shoulder area, and blood flowing from a bite mark on the roommate's forearm. The roommate also told Officer Jones that Mr. Crumley kept trying to attack him in the group home van.

While talking with Mr. Crim, Officer Jones asked whether Mr. Crumley had any mental illnesses or prescribed medications and why Mr. Crumley would bite someone and throw rocks. He also asked what the group home's policy was for handling an incident like this. Mr. Crim couldn't answer most of Officer Jones's questions and couldn't provide Officer Jones with any of Mr. Crumley's diagnoses or medications but said that it seemed like Mr. Crumley had multiple personalities. Mr. Crim then called his supervisor who later arrived at the scene. Officer Jones asked the supervisor the same questions he asked Mr. Crim, but

the supervisor was also unable to provide any answers because that information was kept at the group home and he didn't bring it with him. Officer Jones didn't do anything else to get the information from the group home.

Officer Jones then asked Mr. Crumley what his name was and what was going on, but Mr. Crumley didn't respond verbally or non-verbally. He instead just looked around. Officer Jones observed that Mr. Crumley appeared distant and was either unable or unwilling to communicate. If someone came close to Mr. Crumley, he would start humming and scoot away. Because of all of this, Officer Jones was unable to determine whether Mr. Crumley could understand what was said to him and believed that Mr. Crumley suffered from some type of mental issue.

Officer Jones placed Mr. Crumley in handcuffs and contacted an officer from IMPD's behavioral health services unit, Sergeant Lance Dardeen, for an assessment. Sergeant Dardeen testified that he doesn't remember what he discussed with Officer Jones or whether Mr. Crumley had untreated medical needs. Officer Jones decided that Mr. Crumley would be placed under arrest for misdemeanor battery and taken to Eskenazi Hospital for medical treatment under immediate detention. Mr. Crumley was placed under immediate detention because Officer Jones believed that Mr. Crumley might have been diagnosed with a mental illness, couldn't confirm when Mr. Crumley last took his medications, and believed Mr. Crumley to be a threat to others based on the nature of his alleged actions earlier in the day. The encounter between Mr. Crumley and Officer Jones at the scene lasted for almost an hour. Mr. Crumley cooperated

with Officer Jones when being handcuffed and wasn't threatening or aggressive at any point during the encounter.

Officer Jones testified in his deposition that when IMPD officers have evidence that a crime has been committed, including a victim's complaint that they have been assaulted, they shall press charges and do a report. Mr. Crumley disputes this, claiming that IMPD General Order 1.11 explicitly recognizes an officer's discretion to arrest a person based on factors including the person's prior criminal record, the nature of the crime, the severity of the crime, the likelihood that the individual will commit another crime, and IMPD goals and objectives. But the city defendants say that IMPD General Order 1.12 limits that discretion to not arrest an individual when an officer is responding to offenses that pose an immediate threat to public safety. Officer Jones testified that Sergeant Dardeen agreed with his decision to place Mr. Crumley under arrest because the victim was complaining of pain.

### B. Mr. Crumley's Immediate Detention at Eskenazi Hospital

Mr. Crumley was transported to Eskenazi by ambulance and was unable to answer basic questions when he arrived. Mr. Crumley was no longer in Officer Jones's custody at Eskenazi because custody of Mr. Crumley transferred to the Eskenazi officers, so Officer Jones left. At least one medical professional called Officer Jones after he left and asked if Mr. Crumley's charges could be dropped because the hospital didn't have the medication that Mr. Crumley needed. Officer

Jones responded that there was nothing he could do because he didn't have the right to drop charges or release anyone who wasn't in his custody.

Mr. Crumley didn't meet the inpatient admission criteria at Eskenazi, and since Mr. Crumley was under custodial arrest, he was discharged and transferred to the Marion County Jail after a one-night stay.

### C. Mr. Crumley's Intake at the Marion County Jail

Mr. Crumley arrived at the Marion County Jail on October 14, 2017, at approximately 8:40 a.m. Mr. Crumley was placed in an individual cell when he arrived and disqualified as an inmate worker because of his disability. Several steps involved in processing await a determination by the Marion County Prosecutor's Office about whether an inmate will be criminally charged. If an inmate isn't charged, he will be released and won't go through all the processing steps. At 12:56 p.m. on October 14, the Prosecutor's Office notified the jail that Mr. Crumley was charged. Mr. Crumley was held in an individual cell until all the steps in his processing were complete because of his status as a group home resident.

At approximately 1:00 a.m. on October 15, Nurse Teresa Pierce completed the medical intake screening step of Mr. Crumley's processing. Nurse Pierce knew Mr. Crumley had a disability because Mr. Crumley was talking very slowly. She sent an email to defendants Bouma, Sahm, Frederick, Baker, Crear, Weaver—who are members of the jail's custody or medical staff—with a subject line titled "Medical priority…" that read "Keith Crumley-- 1741716/7100923 is

being made a medical priority d/t his medical condition (group home)." Nurse Pierce informed Mr. Crumley that he could access medical, dental, or mental health services within the jail by making a written or verbal request to a nurse. At least one medical care worker at the jail, Social Worker Schrettenbrunner, didn't believe Mr. Crumley understood how to access medical care because of his lack of communication skills.

If a court enters a bond order while an inmate is still in the intake process facility, the inmate is provided with information about the bond amount, their pending charges, and their court date. The inmate is also allowed to make a phone call to ask that someone pay his bond before being transferred to the main jail. The criminal court set a $150 bond for Mr. Crumley on October 14 at 12:56 p.m. This information was available to the jail. Inmates housed in the general holding area have access to phones, while inmates housed in individual cells don't.

### D. Mr. Crumley's Transfer from Intake to the Main Jail

At about 8:06 a.m. on October 15, Mr. Crumley was transferred from the processing center to the main jail on a line chain with other inmates. Mr. Crumley was pulled out of the line and handcuffed separately because of his disability. One of the transporting officers observed Mr. Crumley to be "boisterous or overly animated" while separately handcuffed, and he kept trying to step away from the wall after being told to stand still. The transporting officer didn't assess whether Mr. Crumley understood what he was saying or could stay

on the wall unsupervised. Mr. Crumley fell into the wall and cut his nose, so he was taken back to Eskenazi for medical treatment.

When he returned to the jail at 6:39 p.m. that same day, Mr. Crumley was placed in a mental health unit patrolled by Officer Foxworthy. At around 10:15 p.m., inmates told Officer Foxworthy that Mr. Crumley was in distress. Officer Foxworthy saw that Mr. Crumley "appeared to be in an unstable state of mind by being unable to communicate, running into walls and defecating himself." He brought Mr. Crumley to a segregated medical unit where Social Worker Schrettenbrunner completed a mental health assessment, and a nurse completed a pre-segregation health assessment.

The pre-segregated health assessment describes Mr. Crumley as disheveled, disorganized, illogical, and childlike and notes that Mr. Crumley is from a group home, isn't high functioning, and that custody requested he be moved to a single cell unit for his safety. These cells are used for inmates suffering from suicidal ideation and sometimes referred to as suicide cells. Social Worker Schrettenbrunner couldn't perform the mental health assessment because Mr. Crumley was nonverbal. And because Social Worker Schrettenbrunner couldn't establish that Mr. Crumley was non-suicidal, Mr. Crumley had to remain in a suicide cell pursuant to jail protocol.

On October 16 at around 9:10 p.m., Mr. Crumley was released in a wheelchair to staff from his group home. Mr. Crumley was disoriented and unable to speak or comprehend anything that was being said to him. He was in a deep stare and his body was very stiff. His arms were contracted to his chest

and he couldn't move his limbs. Group home staff took Mr. Crumley to the nearest emergency room where Mr. Crumley was admitted overnight.

### E. Mr. Crumley Files this Lawsuit

Based on those events, Mr. Crumley has sued Indianapolis, the Sheriff's Office, and Sheriff Kerry Forestal in his official capacity for violation of his rights under Title II of the Americans with Disabilities Act of 1990 and Section 504 of the Rehabilitation Act. He also sued individually defendants Teresa Pierce, Khyree Jones, Tyler Bouma, Joanna Sahm, Robert Frederick, Diedra Baker, Tanesha Crear, William Weaver, and Officer Foxworthy for claims brought under 42 U.S.C. § 1983.

### II.    STANDARD OF REVIEW

"Summary judgment . . . is proper only if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the movant] is entitled to judgment as a matter of law." Protective Life Ins. Co. v. Hansen, 632 F.3d 388, 391-392 (7th Cir. 2011); Fed. R. Civ. P. 56(a). The court's function at the summary judgment stage isn't "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In making that determination, the court must construe the evidence, and all inferences that can reasonably be drawn from the evidence, in the light most favorable to the non-moving party. Id. at 249, 255 ("Credibility determinations,

the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions . . . ."). The movant bears the burden of showing that there is no genuine issue of material fact, but the non-moving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. at 256.

To defeat a summary judgment motion, "the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial" Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007). *See also* Fed. R. Civ. P. 56(e)(2). Summary judgment is "not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005).

In considering cross-motions for summary judgment, "[t]he court applies the procedural requirements of Rule 56 separately to each cross motion . . . ." Nucap Indus., Inc. v. Robert Bosch LLC, 273 F. Supp. 3d 986, 997 (N.D. Ill. 2017) (citing Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund, 778 F.3d 593, 603 (7th Cir. 2015)). "Regarding the parties' factual contentions, the court adopts 'a dual, 'Janus-like perspective' on cross motions aimed at the same claim or defense. On one motion, the court views the facts and inferences in the light most favorable to the nonmovant; but if summary judgment is not warranted,

the court changes tack on the cross motion and gives the unsuccessful movant 'all of the favorable factual inferences that it has just given to the movant's opponent.'" Id. at 997-998 (citing Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund, 778 F.3d at 603).

III.   Discussion

Mr. Crumley now moves for summary judgment on his ADA and Section 504 claims against Indianapolis and Mr. Forestal. Indianapolis and the Sheriff's Office have filed a cross-motions for summary judgment.

"[O]fficial-capacity suits against an officer are generally treated as suits against the governmental entity of which the officer is an agent." Kentucky v. Graham, 473 U.S. 159, 159 (1985); Budd v. Motley, 711 F.3d 840, 843–844 (7th Cir. 2013) ("Because a suit against a government office and the officeholder are identical, the two defendants—the Sheriff and his office—are redundant . . . ."). Mr. Forestal is named as a defendant "with respect to Mr. Crumley's claims under the ADA and Section 504" against the Sheriff's Office as contained in counts 1 and 2 of the complaint. (Compl. ¶ 9). The parties refer to Sheriff Forestal and the Sheriff's Office interchangeably as the same defendant, so the court will analyze Mr. Crumley's ADA and Section 504 claims as if the two defendants are one.

*A.  ADA and Section 504 Claims*

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . . ." 29 U.S.C. 794(a). The parties agree that Indianapolis and the Sheriff's Office can be subject to ADA and Section 504 claims.

"To establish a violation of Title II of the ADA, the plaintiff must prove [1] that he is a qualified individual with a disability, [2] that he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity, and [3] that the denial or discrimination was by reason of his disability." Wagoner v. Lemmon, 778 F.3d 586, 592 (7th Cir. 2015) (internal quotations omitted). "The Rehabilitation Act claim is functionally identical: it requires the plaintiff to allege that '(1) he is a qualified person (2) with a disability and (3) the [state agency] denied him access to a program or activity because of his disability.'" Id. (quoting Jaros v. Ill. Dep't of Corr., 684 F.3d 667, 672 (7th Cir. 2012)). The two claims can be considered together, King v. Hendricks Cty. Commissioners, 954 F.3d 981, 988 (7th Cir.

2020), so the court will refer to Mr. Crumley's ADA and Section 504 claims collectively as ADA claims.

To show that he was discriminated against or denied benefits or services because of his disability, Mr. Crumley must present "evidence that (1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people." Wis. Cmty. Servs., Inc. v. City of Milwaukee, 465 F.3d 737, 753 (7th Cir. 2006). "'Intentional' action by the defendant includes 'deliberate indifference.'" Ravenna v. Vill. of Skokie, 388 F. Supp. 3d 999, 1009 (N.D. Ill. 2019) (citing Lacy v. Cook County, 897 F.3d 847, 863 (7th Cir. 2018)). Deliberate indifference requires both "(1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." Lacy v. Cook County, 897 F.3d at 863 (internal quotations omitted).

All parties agree that Mr. Crumley is a qualified individual with a disability; at issue is whether Mr. Crumley was denied services, programs, or activities of a public entity, and whether that denial was because of his disability.

### 1.  Indianapolis

"Whether [the ADA] applies to law enforcement investigations and arrests, and if so to what extent, is an open question in this circuit." King v. Hendricks Cty. Commissioners, 954 F.3d at 988 (reviewing cases from other circuits on whether the ADA applies to law enforcement investigations and arrests). Like the

circuit court in <u>King</u>, this court may assume without deciding that ADA claims may be brought based on Officer Jones's interactions with Mr. Crumley. <u>Id.</u> at 989. The question is of no consequence because, like in <u>King</u>, Mr. Crumley's evidence falls short in showing that "'but for' [plaintiff's] disability, he would have been able to access the services or benefits desired." <u>Id.</u> (quoting <u>Wis. Cmty. Servs., Inc. v. City of Milwaukee</u>, 465 F.3d 737, 754 (7th Cir. 2006).

Mr. Crumley argues that Officer Jones could have made a reasonable accommodation in his interactions with Mr. Crumley by making an effort to gather information about his mental health treatment and facilitating him receiving medical care without placing him under custodial arrest, but Officer Jones didn't. This failure led to Mr. Crumley's incarceration and suffering greater injury. Had Officer Jones facilitated Mr. Crumley's receipt of medical care, Officer Jones could've issued Mr. Crumley a summons arrest and Mr. Crumley wouldn't have been incarcerated or sustained injury.

Indianapolis argues that Mr. Crumley wasn't denied the service or benefit of a summons arrest because Officer Jones would have had to obtain a promise from Mr. Crumley that he would appear in court before doing that. Ind. Code § 35-33-4-1(f) states that, in lieu of an arrest, an officer "may issue a summons and promise to appear." To issue a summons, an individual must promise to appear in court. Ind. Code § 35-33-4-1(g). But Officer Jones couldn't obtain the promise to appear because Mr. Crumley was non-communicative. Indianapolis therefore says that Mr. Crumley wasn't denied a service or benefit that he would

have been entitled to if he wasn't disabled because Indiana law only allows officers to issue a summons arrest if they can obtain the promise to appear.

Mr. Crumley responds by saying that part of his disability is that he can't communicate if he doesn't have his medication, but he can if he does. So Officer Jones's failure to facilitate him receiving medical care without placing him under custodial arrest (i.e., providing Mr. Crumley a reasonable accommodation) means he was denied services or benefits in his arrest. The court agrees with Mr. Crumley that Indianapolis's argument misidentifies the point of contention—if Mr. Crumley's disability includes the inability to communicate, Indianapolis can't argue that Mr. Crumley wasn't denied services because he couldn't promise to appear.

Indianapolis also argues that undisputed evidence shows that Mr. Crumley was a threat to himself and others, and that under those circumstances, a summons arrest isn't an option according to IMPD General Orders and Indiana law. So Mr. Crumley wasn't denied the service or benefit of a summons arrest based on disability because a summons arrest wasn't an option, regardless of his disability.

Indianapolis says that under Indiana Code § 12-26-4-1:

A law enforcement officer, having reasonable grounds to believe that an individual has a mental illness, is either dangerous or gravely disabled, and is in immediate need of hospitalization and treatment, may do the following:

(1)  Apprehend and transport the individual to the nearest appropriate facility. . . .

(2)  Charge the individual with an offense if applicable.

"'Dangerous', for purposes of IC 12-26, means a condition in which an individual as a result of mental illness, presents a substantial risk that the individual will harm the individual or others." Ind. Code § 12-7-2-53. Officer Jones also testified in his deposition that when IMPD officers have evidence that a crime has been committed, including a victim's complaint that they have been assaulted, they shall press charges and do a report.

Mr. Crumley disputes the necessity of a custodial arrest by citing IMPD General Order 1.11 that explicitly recognizes an officer's discretion to determine whether a custodial arrest is appropriate based on factors including the individual's prior criminal record, the nature of the crime, the severity of the crime, the likelihood that the individual will commit another crime, and IMPD goals and objectives. Another factor included in General Order 1.11 that Mr. Crumley failed to mention is the risk that the suspect is a danger to him/herself or others. Indianapolis points out that IMPD General Order 1.12 limits that discretion to not perform a custodial arrest when an officer is responding to offenses that pose an immediate threat to public safety.

Officer Jones responded to a disturbance in October 2017 because a local proprietor reported that Mr. Crumley was throwing rocks at his business and nearby cars. Mr. Crim corroborated that and reported that Mr. Crumley earlier bit his own roommate, who in turn reported that Mr. Crumley was attacking him in the group home van. Officer Jones saw the bite marks on Mr. Crumley's roommate, one of which was bleeding. Mr. Crim told Officer Jones that Mr. Crumley seemed to have multiple personalities and that he couldn't control Mr.

Crumley when he was throwing rocks. Mr. Crumley says there is no evidence of property damage, and that he was cooperative throughout his interactions with the police. But this isn't enough evidence in rebuttal to establish a genuine issue of fact as to whether Mr. Crumley was a threat to himself or others. Indianapolis cites laws and regulations that a summons arrest isn't appropriate for an individual who is a threat to himself or others. And the court has "no reason to believe that [Officer Jones's] response would have been different had someone not suffering from a mental illness done the same thing . . . ." King v. Hendricks Cty. Commissioners, 954 F.3d at 989.

Accordingly, Indianapolis is entitled to summary judgment on Mr. Crumley's ADA claims because there is no genuine issue of material fact that, but for Mr. Crumley's disability, he would have been able issued a summons arrest in lieu of a custodial arrest.

## 2. The Sheriff's Office

Unlike law enforcement investigations and arrests, it's well-settled that the ADA applies to inmates in state prisons. Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206 (1998). Medical services provided in jail are considered services under the ADA Id. at 210. So are phone services, showers, and toilet facilities. Clemons v. Dart, 168 F. Supp. 3d 1060, 1066 (N.D. Ill. 2016) (citing Jaros v. Ill. Dep't of Corr., 684 F.3d at 672). "The ADA imposes a duty to provide reasonable accommodations to disabled persons" to access services. Hildreth v. Butler, 960 F.3d 420, 430–431 (7th Cir. 2020), cert. denied, 141 S. Ct. 1527 (2021) (citing

42 U.S.C. § 12182(b)(2)(A)(ii)). The ADA doesn't require plaintiffs to have requested specific accommodations. <u>Robertson v. Las Animas County Sheriff's Dept.</u>, 500 F.3d 1185, 1197 (10th Cir. 2007); <u>Clemons v. Dart</u>, 168 F. Supp. 3d at 1068; <u>Phipps v. Sheriff of Cook County</u>, 681 F. Supp. 2d 899, 926 (N.D. Ill. 2009); *see also* 28 C.F.R. § 35.130(b)(7).[3]

Mr. Crumley argues that the Sheriff's Office failed to provide any type of screening or assessment of his needs associated with his intellectual disability, incommunicativeness, and inability to understand how to access the toilet, shower, phone, and medical services. Necessary reasonable accommodations were therefore never determined or provided, and Mr. Crumley was consequently denied access to these services. According to Mr. Crumley, the Sheriff's Office should have provided accommodations in the form of coaching, assisting and prompting for services, or coaching to ensure his needs were met.

The Sheriff's Office responds that Mr. Crumley was reasonably accommodated. It says that when Mr. Crumley was brought to the jail from Eskenazi, he was placed in an individual cell away from other inmates to reduce the risk of harm from those other inmates due to his limited mental capacity. Mr. Crumley was handcuffed separately from other inmates when he was moved within the facility. He was housed within a mental health unit rather than the general population to accommodate his disability. When he was released, the jail

---

[3] The Sheriff's Office argues that ADA requires plaintiffs to request specific accommodations but hasn't cited (and the court isn't aware) of any caselaw in this circuit showing that that's the case outside of the employment context, which is covered under Title I of the ADA, whereas plaintiff's claims are covered under Title II of the ADA.

made certain that someone from his group home was there to get him rather than releasing him to the street. Finally, when Mr. Crumley injured himself by running into a wall and defecating on himself, he was brought to medical staff and was removed from his mental health housing and put into an individual suicide cell. All these accommodations, they say, were enough to reasonably accommodate Mr. Crumley considering he was only in the jail for 51 hours (two of the days fell on Saturday and Sunday) and that isn't enough time to provide the in-depth assessment that Mr. Crumley argues should have been provided.

Mr. Crumley says these accommodations were insufficient because he was still denied equal access to toilet, shower, phone, and medical services because of his disability.

"The question is not whether other modifications could have been made, . . . but whether the accommodations were reasonable" and allowed Mr. Crumley equal access to toilet, shower, phone, and medical services, considering the circumstances of Mr. Crumley's incarceration and the jail's capabilities. Hildreth v. Butler, 960 F.3d at 431. Whether accommodations were reasonable or sufficient to provide Mr. Crumley equal access to the jail services he says he was denied are questions that require "fact intensive analyses not amenable to judgment as a matter of law." Ravenna v. Vill. of Skokie, 388 F. Supp. 3d at 1010. The Sheriff's Office hasn't demonstrated that there is no genuine issue of material fact that Mr. Crumley wasn't denied equal access to toilet, shower, phone, and medical services. But Mr. Crumley hasn't shown that, as a matter of

law, he wasn't provided reasonable accommodations, considering all the circumstances. Neither party is entitled to summary judgment on this basis.

Mr. Crumley makes two more arguments to prove his ADA claim against the Sheriff's Office: (1) that he was subjected to discrimination because the Sheriff's Office's actions disproportionately impacted him based on his disability, and (2) the Sheriff's office was deliberately indifferent to his disability.

Proof of disproportionate impact on a disabled individual can be evidence that he was discriminated against or denied benefits or services based on his disability. Wis. Cmty. Servs., Inc. v. City of Milwaukee, 465 F.3d at 753. "Disparate impact discrimination occurs when an entity adopts a policy or practice that is 'facially neutral in [its] treatment of different groups but that in fact fall[s] more harshly on one group than another and cannot be justified by a [nondiscriminatory] necessity.'" Swan v. Bd. of Educ. of City of Chicago, 2013 WL 4401439, at *12 (N.D. Ill. Aug. 15, 2013) (quoting Raytheon Co. v. Hernandez, 540 U.S. 44 (2003)). "To establish a disparate impact claim, a plaintiff must (1) isolate and identify specific practices that are allegedly responsible for any observed statistical disparities; and (2) establish causation by 'offer[ing] statistical evidence of a kind and degree sufficient to show that the practice in question has caused the [alleged harm] because of their membership in a protected group.'" Id. (quoting Puffer v. Allstate Ins. Co., 675 F.3d 709, 717 (7th Cir. 2012)).

Mr. Crumley argues that he was subjected to disproportionate impact because of his disability when he was transported from the processing center to

the jail and fell while handcuffed behind his back, and when he was placed in a suicide cell after he ran into walls and defecated himself.

Mr. Crumley's disproportionate impact theory stumbles over several obstacles. First, while Mr. Crumley identified two specific practices by which he was discriminated against, he doesn't cite any statistical evidence of a kind and degree sufficient to show that being pulled from the line chain and handcuffed behind his back, or that being placed in the suicide cell, caused his harm *because of his disability.* He hasn't established a prima facie ADA claim, much less shown that there is no genuine issue of material fact such that he is entitled to judgment as a matter of law. Moreover, undisputed evidence shows that Mr. Crumley was "boisterous or overly animated" when he was on the line chain and that Social Worker Schrettenbrunner couldn't complete a mental health assessment, so Mr. Crumley had to stay in the suicide cell under jail protocol. This is uncontroverted evidence that these practices could be justified by a nondiscriminatory necessity. Mr. Crumley isn't entitled to summary judgment on his ADA claim against the Sheriff's Office on this basis.

Finally, Mr. Crumley argues that the Sheriff's Office's decision to incarcerate Mr. Crumley without providing accessible services and supports constituted deliberate indifference. Evidence that a defendant intentionally acted based on an individual's disability can be evidence that he was discriminated against or denied benefits or services based on his disability. Wis. Cmty. Servs., Inc. v. City of Milwaukee, 465 F.3d at 753. Intentional action includes "deliberate indifference." Lacy v. Cook County, 897 F.3d at 863. To show deliberate

indifference, a plaintiff must show "both (1) 'knowledge that a harm to a federally protected right is substantially likely,' and (2) 'a failure to act upon that likelihood.'" Id. (quoting S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248, 263 (3d Cir. 2013)). This standard was adopted "to combat discrimination that is 'most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect.'" Id. (quoting Alexander v. Choate, 469 U.S. 287 (1985)).

"The first [prong of the deliberate indifference standard] is satisfied when the public entity has notice that an accommodation is required." Kennington v. Carter, 2004 WL 2137652, at *7 (S.D. Ind. June 28, 2004) (citing Lovell v. Chandler, 303 F.3d 1039, 1056 (9th Cir. 2002), cert. denied, 537 U.S. 1105 (2003)); Clemons v. Dart, 168 F. Supp. 3d at 1070 ("As to the first prong of the deliberate indifference analysis—knowledge that harm was likely—it could hardly have been more apparent that [plaintiff], who spends his every waking moment confined to a wheelchair, was in need of ADA compliant facilities."). The Sheriff's Office doesn't dispute that it knew of Mr. Crumley's need to be accommodated; as already noted, the Sheriff's Office argued that it adequately and reasonably accommodated Mr. Crumley, given the circumstances.

The failure-to-act prong precludes Mr. Crumley's summary judgment motion for the reasons already discussed. Whether the Sheriff's Office failed to act in providing the necessary accommodations depends on whether the accommodations that were provided were sufficient to provide equal access to services and reasonable under the circumstances. Those are factual questions

22

best left to a jury, so neither party is entitled to summary judgment as a matter of law.

*   *   *

Neither Mr. Crumley nor the Sheriff's Office is entitled to summary judgment on Mr. Crumley's ADA claims against the Sheriff's Office.

### B. Section 1983 Claims

The two remaining city defendants—Officer Jones and Mr. Bouma—have moved for summary judgment on the claims brought against them under 42 U.S.C. § 1983. The individual municipal defendants have done the same.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotations omitted). "Qualified immunity is an affirmative defense, and once raised, the plaintiff bears the burden of defeating it by showing: (1) the defendant violated a constitutional right, and (2) that right was clearly established at the time of the alleged violation." Sinn v. Lemmon, 911 F.3d 412, 418 (7th Cir. 2018). "A failure to show either is fatal for the plaintiff's case." Archer v. Chisholm, 870 F.3d 603, 613 (7th Cir. 2017). "Courts may exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Day v. Wooten,

23

947 F.3d 453, 460 (7th Cir. 2020), cert. denied sub nom. <u>Shanika Day v. Wooten</u>, 141 S. Ct. 1449, 209 L. Ed. 2d 164 (2021) (internal quotations omitted).

Mr. Crumley argues that Officer Jones violated his clearly established rights under the ADA by not accommodating him, and by failing to attend to his medical needs in violation of the Fourth Amendment. Officer Jones asserts qualified immunity. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Kisela v. Hughes</u>, 138 S. Ct. 1148, 1152 (2018). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." <u>Mullenix v. Luna</u>, 577 U.S. 7, 11 (2015) (internal quotations omitted).

As already noted, "[w]hether [the ADA] applies to law enforcement investigations and arrests, and if so to what extent, is an open question in this circuit." <u>King v. Hendricks Cty. Commissioners</u>, 954 F.3d at 988. So Mr. Crumley's § 1983 claim against Officer Jones based on violations of his rights under the ADA doesn't satisfy the second prong of the qualified immunity analysis because that right isn't clearly established.

Mr. Crumley's § 1983 claim against Officer Jones based on his failure to attend to Mr. Crumley's medical needs also fails. "[Qualified] immunity protects all but the plainly incompetent or those who knowingly violate the law." <u>Kisela v. Hughes</u>, 138 S. Ct. at 1152. "[A] defendant is liable for providing inadequate medical care if the defendant's response to the plaintiff's medical need is objectively unreasonable." <u>Smith v. Adams</u>, 2019 WL 1542298, at *10 (S.D. Ind.

Apr. 9, 2019), aff'd, 804 F. App'x 390 (7th Cir. 2020); *see also* Ortiz v. City of Chicago, 656 F.3d 523, 531–532 (7th Cir. 2011) ("The question on summary judgment is whether a jury could find that it was objectively unreasonable for each defendant to take no action to seek medical care for [plaintiff] based on what she knew at the time."). "Four factors inform [the court's] determination of whether an officer's response to [plaintiff's] medical needs was objectively unreasonable: (1) whether the officer has notice of the detainee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns." Ortiz v. City of Chicago, 656 F.3d 523, 530 (7th Cir. 2011).

No reasonable juror could find that Officer Jones's response to Mr. Crumley's medical needs was objectively unreasonable. Looking at the evidence in the light most favorable to Mr. Crumley, Officer Jones acknowledged that Mr. Crumley appeared to have some sort of mental issue. He therefore asked Mr. Crim and Mr. Crim's supervisor if Mr. Crumley had any medical conditions or prescribed medications. Neither could give Officer Jones any information. He therefore placed Mr. Crumley under immediate detention to be transported to Eskenazi for treatment. Mr. Crumley argues that Officer Jones had other options and could have attended to his medical needs by issuing a summons arrest instead. But as already discussed, this wasn't an option under the circumstances. And police interests—specifically, protecting the public from danger—support Officer Jones's decision not to issue a summons arrest.

Accordingly, Officer Jones is entitled to summary judgment on Mr. Crumley's § 1983 claim against him.

A similar analysis applies to Officer Foxworthy. Mr. Crumley argues that Officer Foxworthy violated Mr. Crumley's Fourth Amendment rights by failing to protect him while in custody. He says that Officer Foxworthy was assigned to work the mental health unit that Mr. Crumley was assigned to and was responsible for proactively checking on the inmates' overall well-being. But Officer Foxworthy only became aware that Mr. Crumley was running into walls and defecating himself after other inmates told Officer Foxworthy of the situation. Mr. Crumley says this is significant because Officer Foxworthy should have known that Mr. Crumley was at risk of behaviors associated with his disabilities as that's why he was placed on the mental health unit. Officer Foxworthy asserts the affirmative defense of qualified immunity.

Looking at the facts in the light most favorable to Mr. Crumley, no reasonable juror could find that Officer Foxworthy's actions were objectively unreasonable. It's Mr. Crumley's burden to defeat Officer Foxworthy's defense, but Mr. Crumley doesn't cite any evidence that Officer Foxworthy was on notice of Mr. Crumley's specific medical needs beyond the mere fact that he was housed on the mental health unit. When Officer Foxworthy found out about Mr. Crumley's need for additional medical attention, he brought Mr. Crumley to a segregated medical unit where Mr. Crumley was seen by Social Worker Schrettenbrunner and a nurse. Mr. Crumley makes much of the fact that other inmates alerted Officer Foxworthy to Mr. Crumley's emergency, but this alone

isn't enough to establish a genuine issue of material fact that Officer Foxworthy's conduct was objectively unreasonable. *See* Lovett v. Herbert, 907 F.3d 986, 993 (7th Cir. 2018) ("Examination of the specific context of the Officers' conduct in this case shows that it was not 'egregiously' or 'obviously' unreasonable."). Officer Foxworthy is entitled summary judgment on Mr. Crumley's § 1983 claim against him.

Finally, Mr. Bouma and the rest of the municipal individual defendants argue that they are entitled to summary judgment on Mr. Crumley's § 1983 claims against them because they weren't personally involved in any of the alleged violations committed against Mr. Crumley. Mr. Crumley responds to this argument only briefly.

"To recover damages under 42 U.S.C. s 1983, a plaintiff must establish defendants' personal responsibility for the claimed deprivation of a constitutional right." Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982). "Only persons who cause or participate in the violations are responsible." George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (citing cases). "An official satisfies the personal responsibility requirement of section 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." Crowder v. Lash, 687 F.2d at 1005; *see also* Chavez v. Illinois State Police, 251 F.3d 612, 651 (7th Cir. 2001) ("[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are

27

not liable . . . . The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.").

Mr. Bouma wasn't working for the Sheriff's Office at the time of Mr. Crumley's incarceration because he had taken another job two months BEFORE in August 2017. Mr. Bouma is entitled to summary judgment on Mr. Crumley's § 1983 claim against him.

The extent to which the rest of the individual municipal defendants were involved in anything that happened to Mr. Crumley exclusively relates to the email that Nurse Pierce sent them when she completed Mr. Crumley's medical intake screening. The individual municipal defendants received an email from Nurse Pierce entitled "Medical priority..." that read "Keith Crumley-- 1741716/7100923 is being made a medical priority d/t his medical condition (group home)." That alone isn't enough to establish a genuine issue of material fact that the individual municipal defendants caused or participated in constitutional violations against Mr. Crumley. Accordingly, the individual municipal defendants are entitled to summary judgment on Mr. Crumley's § 1983 claim against them.

## IV.   CONCLUSION

For the following reasons, the court DENIES Mr. Crumley's motion [Doc. No. 95] and GRANTS the city defendants' motion [Doc. No. 109]. The court GRANTS IN PART AND DENIES IN PART the municipal defendants' motion [Doc.

No. 107], granting summary judgment to all the municipal defendants except for the Sheriff's Office.

SO ORDERED.


ENTERED: <u>September 29, 2021</u>


                    <u> /s/ Robert L. Miller, Jr.     </u>
                    Judge, United States District Court

Distribution:  All electronically counsel of record